**Mai E. GILLEY, Plaintiff–Appellee,**

v.

**PROTECTIVE LIFE INSURANCE COMPANY, Defendant–Appellant.**

**No. 93–7102.**

United States Court of Appeals,
Fifth Circuit.

March 31, 1994.

---

Michael Watts, Janet G. Arnold, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, MS, for defendant-appellant.

John J. Crow, Jr., Water Valley, MS, C. Collier Carlton, Jr., Farese, Farese & Farese, Ashland, MS, for plaintiff-appellee.

Before HENDERSON *, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The district court held that under MISS. CODE ANN. § 83–9–33 (1991), an insurance company that has provided single person health insurance is obliged to pay for the medical expenses of the insured's newborn child. Concluding that no such obligation

* Circuit Judge of the Eleventh Circuit, sitting by designation.

exists, we reverse and render judgment in favor of the company.

## I.

Mai Gilley was an employee of the Yalobusha County School District, which offered its employees a group insurance plan underwritten by the Protective Life Insurance Company. In 1987, Gilley purchased "single" coverage for herself under the plan. Such a policy carried a monthly premium of $90.70. Gilley had the opportunity to, but did not, enroll in coverage for her family.[1] Gilley had no children when she enrolled. Her husband had his own insurance plan, under which he too had chosen single person coverage.

Gilley's insurance policy provided in pertinent part:

### WHEN INSURANCE FOR DEPENDENTS BEGINS

To insure your Dependents, you must fill out and sign our enrollment card and give it to your Employer.

Such enrollment card must be submitted:

. . . .

(d) within 31 days after the date you first acquire a Dependent.

. . . .

If such enrollment card is submitted as provided in . . . "(d)" above, insurance for each then eligible dependent will begin on the later of (a) the first day of the calendar month which occurs on or next follows the date we receive such enrollment card or (b) the date your insurance begins, subject to being deferred as shown under DEFERRAL OF INSURANCE FOR DEPENDENTS.

. . . .

If a Dependent first becomes eligible while insurance for your Dependents is in effect, that Dependent's insurance will begin on the date he or she becomes eligible, subject to being deferred as shown under DEFERRAL OF INSURANCE FOR DEPENDENTS.

. . . .

### DEFERRAL OF INSURANCE FOR DEPENDENTS

If a Dependent is confined at home or in any facility due to injury, sickness, or any other physical condition or mental disability on the date insurance for that Dependent otherwise would begin, such insurance will not begin until the date that Dependent is no longer confined.

However, Medical Care Insurance for your natural child born while Medical Care Insurance for your Dependents is in effect will begin on that child's birthdate even if that child is confined on that date.

The insurance policy provided that coverage would be denied for a pre-existing condition, defined as:

Pre–Existing Condition—any injury or illness for which you (or a Dependent) see a Qualified Practitioner and/or receive care, services, or supplies within the 90 day period just before becoming insured under the Policy.

• • • • •

For a Dependent, a condition is deemed not Pre-existing after the earlier of the following dates:

(a) the date 90 days in a row have gone by (beginning before, on, or after the date of becoming insured and ending after that date) during which the Dependent did not see a Qualified Practitioner or receive care, services, or supplies in connection with that Injury or Illness; or

(b) the date the Dependent has been insured for 365 days in a row.

On March 12, 1989, Gilley gave birth prematurely to twin boys, one of whom died at

---

1. The enrollment form contained two boxes to be checked, one of which was labeled "single," and one "family." Gilley checked the box labeled "single." Gilley left blank a space for a list of "all eligible dependents." It is undisputed that, under the terms of her insurance policy, Gilley could have procured coverage for her husband before November 1, 1988.

birth. The surviving son, Kainen, remained in the hospital continuously from his birth until he was released on July 12, 1989. During the four months Kainen was in the hospital, the hospital bills attributable to his care amounted to approximately $140,000.[2]

Approximately a week and a half after the birth, Gilley completed an enrollment application adding both Kainen and her husband to her policy. The premium for family coverage was $295.05 per month. When the insurance company received Gilley's enrollment card, it requested that Gilley complete "Evidence of Insurability" forms on her husband and her son.

On April 17, 1989, Gilley submitted the forms. On her son's form, Gilley entered the son's date of birth, and under the heading "Duration of Treatment–Results or Remaining Effects," Gilley wrote "Treatment in Progress." Under the form's heading "Name and address of Physician and of Hospital or other Institution," Gilley listed "Edwin G. Brown" and "Jackson University Medical Center."

The insurance company sent a letter requesting more detailed information.[3] But when Gilley called the insurance company to give such information, she was told "never mind." On May 3, 1989, the insurance company sent a letter to the school district stating that it would cover Gilley's son starting May 1, 1989.[4]

An internal document from the insurance company, a "Health Services Case Review Form," indicates that the company opened a file for Gilley's surviving son on March 13, 1989. On the first page of the form, the attending physician is listed as "Edwin Brown," and the facility is listed as "Univ." The Diagnosis/Symptoms section contains the entry "prematurity 25 wks." Under the heading Medical Admission—Treatment Plan, the word "NICU" is written. Although the above entries are undated, the second page of the form contains a number of entries dated March 14, 1989 to March 17, 1989. The March 14 entry contains the words "25 wk gest. 725 gm. On vent. P__ax—chest tube."

Despite its May 3 letter, the insurance company now has changed its position, arguing that it is not liable for any of Kainen's medical expenses. The hospital turned the Gilleys' debt for Kainen's medical expenses over to a collection agency, and the Gilleys began paying the hospital at the rate of approximately $100 per month.

The company billed Gilley for single person coverage for March and April 1989. Nonetheless, for those two months Gilley

---

2. Gilley's own medical expenses are not at issue.

3. The letter read,

> April 21, 1989
> Yalobusha County Schools
> P.O. Box 151
> Water Valley, MS 38965
> ATTENTION: Ms. Ann Surrette
> Re: Mai E. Gilley
> Dear Ms. Surrette:
> I received the enrollment card and Evidence of Insurability forms on the above. Medical coverage was approved on her husband, Clifton B. Gilley and will become effective May 1, 1989. In reference to coverage on her son, I am going to need more detailed information for the answer she listed on her form (treatment in progress). We need to know what this situation is and what kind of treatment is she referring to?
> I am sending a copy of her form for her to give a more detailed summary on his condition.
> Thank you for your attention to this matter and if you should have any questions, please let me know. Our toll free number is ... and my extension is ....
> Sincerely,
> /s/
> Tina L. Lawrence
> Account Representative
> Group Customer Service

4. The letter read,

> May 3, 1989
> Yalobusha County Schools
> P.O. Box 151
> Water Valley, MS 38965
> ATTENTION: Ms. Ann Surrette
> Re: Mai E. Gilley
> Dear Ms. Surrette:
> Please inform the above insured that medical coverage on her son Kainen Bryan Gilley has been approved and will be effective May 1, 1989. If you should have any questions, please let me know. Our toll free number is ... and my extension is ....
> Sincerely,
> /s/
> Tina L. Lawrence
> Account Representative
> Group Customer Service

made payments to the company at the family rate. On February 28, 1991, the company reimbursed Gilley for the difference between the family and single rates for the two months. There is no evidence in the record about the payments or billings for subsequent months.

## II.

Gilley sued the insurance company, alleging that she should recover medical expenses and extracontractual and punitive damages. Neither Gilley nor the insurance company requested a jury trial. The insurance company moved for summary judgment on all of Gilley's claims.

The district court granted the motion as it related to punitive damages but denied the motion as it related to medical expenses, relying upon MISS.CODE ANN. § 83–9–33 (1991).[5] Nearly two months later, the court entered a final judgment in favor of Gilley as to her claim for medical expenses and dismissed her claim for extracontractual and punitive damages.[6] The insurance company now appeals the denial of its motion for summary judgment as it related to medical expenses.

## III.

■ The insurance policy, under its terms, does not require the company to pay for Kainen's medical expenses. A review of the relevant provisions shows that insurance coverage for Kainen did not begin until the day he was released from the hospital.

In order to begin coverage for a dependent, the insured must submit an enrollment card within thirty-one days after the date the insured first acquires the dependent:

> To insure your Dependents, you must fill out and sign our enrollment card and give it to your employer.

Such enrollment card must be submitted:

(d) within 31 days after the date you first acquire a Dependent.

Gilley did fill out an enrollment card requesting family coverage within thirty-one days after Kainen's birth on March 12, 1989. Approximately a week and a half afterward, Gilley completed an enrollment application to add both Kainen and her husband to her group policy. The insurance company did not receive the card until April 1989.

Once an enrollment card has been submitted, the insurance policy provides that coverage begins on the later of: (a) the first day of the month after receipt of the enrollment card or (b) the end of the deferral period applicable to dependents who are confined for health treatment on the date coverage otherwise would begin. The "(a)" date would be May 1, 1989, as the enrollment card was received in April. The "(b)" date is determined by reference to the policy's deferral provision, which says,

> If a Dependent is confined at home or in any facility due to injury, sickness, or any other physical condition or mental disability on the date insurance for that Dependent otherwise would begin, such insurance will not begin until the date that Dependent is no longer confined.

Because Gilley's son was in the hospital on May 1, 1989, the "(b)" date is July 12, 1989, the day the son was released from the hospital. The later of the "(a)" and "(b)" dates is July 12. Coverage therefore was deferred until July 12, and none of Kainen's stay in the hospital was covered.

## IV.

■ The district court erroneously held that MISS.CODE ANN. § 83–9–33 required the insurance company to pay for the son's medical expenses from the date of birth. Section 83–9–33(1) provides,

> All individual and group health insurance policies providing coverage on an expense incurred basis and individual and group

---

5. Although the district court order was silent regarding Gilley's claim for extracontractual damages, the final judgment dismissed her claim for extracontractual damages.

6. The district court ordered that Gilley should recover $141,273.99, plus prejudgment and postjudgment interest.

service or indemnity type contracts issued after January 1, 1980, by an insurer or nonprofit corporation *which provides coverage for a family member of an insured* or subscribed shall, as to *such family members'* coverage, also provide that the health insurance benefits applicable for children shall be payable with respect to a newly born child of the insured or subscriber from the moment of birth.

MISS.CODE ANN. § 83–9–33(1) (1991) (emphasis added).[7] Interpretation of § 89–3–33 is a matter of law, and we therefore review the district court's judgment *de novo.*

Gilley argues that § 83–9–33(1) applies to her, contending that her insurance policy "provides coverage for a family member of the insured" because she is a family member of her own family. We disagree. A "family member of the insured" means a family member who is not the insured herself.

Although the question of whether § 83–9–33(1) applies to single person coverage is one of first impression in Mississippi, two courts have construed a similar statute in Missouri.[8] The Missouri statute reads,

All individual and group health insurance policies ... which provide coverage for a family member of the insured or subscriber shall, as to such family member's coverage, also provide that the health insurance benefits applicable for children shall be payable with respect to a newly born child of the insured or subscriber from the moment of birth.

Mo.REV.STAT. § 376.406(1) (1991). In *Shaw v. Republic Nat'l Life Ins. Co.,* 622 F.Supp. 93, 96 (E.D.Mo.1985), the court held that the Missouri statute does not apply unless the insurance policy in question already provides for family or dependent coverage. Six years later, a court reached the opposite result in *Kelly v. Pan–Am. Life Ins. Co.,* 765 F.Supp. 1406, 1412 (W.D.Mo.1991). Although the policy in *Kelly* did not provide for family coverage or dependent coverage, the court reasoned that the insured, a mother, was a "family member of her own family." *Id.* The *Kelly* court distinguished *Shaw* on the unconvincing ground that the insured in *Shaw* was a father, not a mother. *Id.*

Wisconsin had a statute similar to the Mississippi and Missouri statutes. WIS.STAT. § 632.895(5)(a) (1989–90), *amended by* WIS. STAT. § 632.895(5)(a) (1991–92). That statute, which has been subsequently amended, applied to a "policy which provides coverage for a member of a member of the insured's family." *Id.*[9] Wisconsin's insurance regulators interpreted a "policy which provides coverage for a member of the insured's family" to mean a policy that "provides coverage for another family member, *in addition to the insured person,* such as the insured spouse or a child." WIS.ADMIN.CODE § INS. 3.38 (Feb.1993) (emphasis added).

We read the phrase "a family member of the insured" in MISS.CODE ANN. § 83–9–33 as referring to a family member of the insured besides the insured herself.[10] Because Gilley's insurance does not cover any family member, she is not protected by § 83–9–33.

If the Mississippi legislature had intended to enlarge the coverage of a single person policy, it should have used a phrase like "an insured *or* the insured's family members."

---

7. MISS.CODE ANN. § 83–9–33(2) defines coverage for newborn children as "coverage of injury or sickness including the necessary care and treatment of medically diagnosed congenital defects, prematurities and birth abnormalities, but need not include routine well baby care."

8. The insurance company cites a North Carolina case, *Norris v. Home Security Life Ins. Co.,* 42 N.C.App. 719, 257 S.E.2d 647 (1979), but the North Carolina statute at issue in that case is substantially different from MISS.CODE ANN. § 83–9–33.

9. The full text of the statute is as follows:
No disability insurance policy which provides coverage for a member of the insured's family may be issued unless it provides that benefits applicable to children shall be payable with respect to a newly born child of the insured from the moment of birth.

10. Gilley admitted as much in response to the insurance company's interrogatories. The life insurance company had asked Gilley to "list each and every individual family member of the insured who was covered under the Group Insurance Plan issued to Mai E. Gilley from Protective Life." Gilley's response: "No family member was covered." If Gilley truly had believed her argument, she should have listed herself.

Alternatively, Mississippi could have adopted the Wisconsin statute, which now reads,

> *Every* disability insurance policy shall provide coverage for a newly born child of the insured from the moment of birth.

WIS.STAT. § 632.895(5)(a) (1991–92) (emphasis added). Mississippi did not choose either of these alternatives.

## V.

The next issue is whether the insurance company waived its right to deny coverage because (1) it wrote a letter assuring that it would provide coverage to Gilley's son effective May 1, 1989, or (2) it temporarily accepted additional premiums from Gilley for coverage of her son. Because waiver cannot operate to extend the subject matter of an insurance policy, we conclude that waiver is not applicable.

### A.

▪ Before we consider the merits of Gilley's waiver argument, we must examine the company's contention that Gilley has forfeited her argument by failing to lodge it early enough in the case. Gilley did not mention waiver in her original complaint but relied solely upon her § 83–9–33 argument. Later, when the insurance company propounded an interrogatory to Gilley asking her to set forth her factual and legal basis for recovering insurance benefits, Gilley responded merely that "Section 83–9–33 requires medical coverage for children at birth. Such was not

done."[11] The first time Gilley asserted the waiver argument was in response to the motion for summary judgment.[12]

We have found no authority—and the insurance company has provided us with none—to the effect that an argument first raised in response to a motion for summary judgment is waived on appeal.[13] Gilley raised the waiver argument early enough for the trial court to consider the matter when ruling on the insurance company's motion for summary judgment. Since we are considering an appeal of such motion, we conclude that the issue is properly before us on appeal.

### B.

▪ We can now proceed to the merits of Gilley's waiver argument.[14] The doctrine of waiver cannot extend an insurance policy to cover additional subject matter:

> This Court follows the general rule that waiver or estoppel can have a field of operation only when the subject matter is within the terms of the policy, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded. An insurer may be estopped by its conduct or knowledge from insisting on a forfeiture of a policy, but the coverage or restrictions

---

**11.** The exact language of the interrogatory was as follows:

> Please set forth your factual and legal basis for the allegations in your Complaint that you are presently entitled to recover any contractual benefits, in any amount, from Protective Life.

Gilley's answer was dated January 15, 1991.

**12.** Specifically, Gilley's response to the motion for summary judgment contains the following text:

> Upon acquiring Kainen as eligible dependent, Mrs. Gilley did everything expected and required of her to enroll the eligible dependent as required by the statute and the policy itself. She truthfully and promptly provided all information requested of her. Additionally, she paid all premiums required of her beginning with the March 1989 premium. As a conse-

quence, Protective has waived its right to assert its defense of no dependent coverage. Coverage on Kainen should have begun at the moment of birth. At the *very least* coverage should have begun on May 1, 1989, when Protective specifically accepted Kainen.

(emphasis in original) (citations omitted).

**13.** We have held that an argument is waived if the party fails to make the argument in response to summary judgment. *See Haubold v. Intermedics, Inc.,* 11 F.3d 1333, 1336 (5th Cir.1994).

**14.** Gilley's argument is properly characterized as waiver, not estoppel. "A waiver is an intentional relinquishment of a known right; estoppel is a preclusion, by operation of law, of the right to assert a defense or remedy." 16B JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE at v (1981).

on the coverage cannot be extended by the doctrines of waiver or estoppel.

*Employers Fire Ins. Co. v. Speed,* 133 So.2d 627, 629 (Miss.1961) (citations omitted).[15] Extending insurance coverage to Gilley's son would expand the policy to cover a "risk" or "loss" not contemplated by the language of the policy. Therefore, the waiver doctrine is not operable in this case.

The district court refused to consider the question of the insurance company's waiver, stating that the "issues of waiver require more factual development than which exists in the present status of the record." The court explained,

> On the face of the record as it relates to any issue of waiver, there appear to be several unanswered questions and disputes of material facts. For one example, what was the basis for Protective Life's belief that Kainen was no longer hospitalized after May 1, 1989? Additionally, the actual or apparent authority, if any, of Protective Life representatives who made certain representations to the Gilleys has not been addressed by either party.

Thus, the district court thought it inappropriate to dispose of the waiver issue at the summary judgment level. We disagree, holding that the doctrine of waiver is inapplicable as a matter of law.

The final judgment of the district court is REVERSED, and judgment is RENDERED in favor of the Protective Life Insurance Company.

---

15. *See also* 16B Appleman & Appleman, *supra* note 14, § 9090, at 579–82 ("It has been repeatedly held that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein. While an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting on a forfeiture of a policy, under no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel.") (footnotes omitted).