**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 13, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 03-30038

FOSTER WHEELER ENERGY
CORPORATION,

Plaintiff-Appellant,

versus

AN NING JIANG MV, Etc; ET AL,

Defendants,

INDUSTRIAL MARITIME CARRIERS
(BAHAMAS), INC., in personam

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before BENAVIDES, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this maritime action arising from cargo damage sustained during a voyage from Spain to

China, shipper Foster Wheeler Energy Corporation ("Foster Wheeler") appeals from a final judgment

entered in its favor, challenging the district court's summary judgment ruling that terms in the

relevant bills of lading entitled the carrier to limit its liability to $500 per package under the Carriage of Goods by Sea Act ("COGSA"). Because we find that in this case that the Hague-Visby Rules as enacted in Spain, not COGSA, apply ex proprio vigore and cannot be overcome by any terms in the bills of lading at issue here, we affirm the district court's judgment on liability, reverse the district court's ruling that COGSA governs the quantum of damages owed, and remand the case for a proper calculation of damages in accordance with the Spanish Hague-Visby Rules.

FACTUAL AND PROCEDURAL BACKGROUND

Foster Wheeler brought this maritime suit against the M/V AN NING JIANG, *in rem,* and carrier Industrial Maritime Carriers (Bahamas), Inc. ("IMC"), *in personam*, seeking relief for damage to a shipment of 695 packages containing equipment for two coal-fired generation units carried under bills of lading from Tarragona and Gijon, Spain to Xingang, China. The underlying facts are not in dispute. Foster Wheeler is a multi-national corporation which is principally domiciled in the United States and is engaged in a wide variety of manufacturing and shipping endeavors. IMC, a corporation organized under the laws of the Bahamas with its principal place of business in New Orleans, Louisiana, is engaged in the operation of vessels for the carriage of goods for hire. In February 1999, Foster Wheeler retained IMC to ship the generation equipment from Spain to China aboard the M/V AN NING JIANG, operated under charter by IMC at all times pertinent to this litigation. Accordingly, IMC, through its agent Intermarine Incorporated ("Intermarine"), issued three identical CONLINEBILL form bills of lading in Hamburg, Germany, listing Foster Wheeler as the shipper, Tarragona and Gijon, Spain as the ports of loading,[1] and Xingang, China as the port of

---

[1]Part of the shipment, covered under one bill of lading, was loaded aboard the AN NING JIANG at the port of Gijon, Spain, while the remainder of the shipment was loaded on the vessel in Tarragona, Spain, consistent with the terms of the two bills of lading issued for that carriage.

discharge. In late May 1999, the equipment was delivered in good order to the ports of Tarragona and Gijon and loaded aboard the AN NING JIANG. Unfortunately, the vessel encountered heavy weather conditions during the voyage, causing a number of the packages to shift and become damaged before being discharged in China.

On December 13, 2000, Foster Wheeler filed suit against the AN NING JIANG, *in rem*, and IMC, as the carrier,[2] in the Eastern District of Louisiana seeking to recover damages in the amount of $ 228,576.73 as a result of IMC's alleged breach of its duties under COGSA, 46 U.S.C. §§ 1300 et seq., and/or the Harter Act, 46 U.S.C. §§ 190 et seq.. IMC answered that pursuant to the terms of the bills of lading, the quantum of its liability, if any, should be limited in accordance with COGSA's $500 per package limitation, which in this case would cap IMC's exposure for cargo damage at $39,453.74.[3] The three bills of lading at issue bore no explicit reference to any liability

---

[2]By the time of appeal, Foster Wheeler and IMC were the only parties remaining in this litigation. Foster Wheeler never served the AN NING JIANG. Both the vessel owner, added as a defendant by Foster Wheeler in a supplemental and amended complaint, and a third-party defendant were dismissed from the suit prior to the district court's entry of final judgment.

[3]See 46 U.S.C. App. § 1304(5). Section 1304(5) of COGSA provides in relevant part:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading . . . .

> By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, that such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

46 U.S.C. App. § 1304(5).

limitation. Instead, each of the three bills of lading contained the following pertinent conditions of carriage:

### 2. General Paramount Clause

The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th of August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments in which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

*Trades where Hague-Visby Rules Apply*

In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23, 1968-the Hague Visby Rules apply compulsorily, the provisions of the respective legislation shall be considered incorporated into this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in charge of another carrier, and to deck cargo and live animals.[4]

### 3. Jurisdiction

---

[4]Both Spain, the country of shipment, and the United States ratified the "Hague Rules" in the International Convention for the Unification of Certain Rules Relating to Bills of Lading of 1924 ("1924 Hague Rules"). In the United States, the 1924 Hague Rules were statutorily enacted in the form of COGSA, which generally entitles "a carrier to limit its liability to $500 per package or, if the goods are not shipped in packages, per customary freight unit." See Craddock Intern. Inc. v. W.K.P. Wilson & Son, Inc., 116 F.3d 1095, 1106-07 (5th Cir. 1997) (citation omitted); WILLIAM TETLEY, MARINE CARGO CLAIMS 1102 (3d ed. 1988)). Unlike the United States, however, Spain also subsequently adopted two amending protocols to the Hague Rules, the 1968 Visby Amendment and the 1979 "SDR" Protocol thereto (collectively, the "Hague-Visby Rules"), which impose a higher limitation of liability on the carrier of 666.67 special drawing rights (SDR) per package or 2 SDR per kilo, whichever is greater. See Protocol to Amend the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, Feb. 23, 1968, 1977 RTA7 49 ["Visby Amendments"], reprinted in 6 BENEDICT ON ADMIRALTY §§ 1-25 to 1-31.1 (7th ed. 2001)).

Any lawsuit arising under this Bill of Lading shall be filed at New Orleans, the Carrier's principal place of business, in the U.S. District Court for the Eastern District of Louisiana. U.S. Law shall apply.

On April 25, 2002, IMC filed a motion for partial summary judgment seeking a declaration that, pursuant to the Jurisdiction clause, COGSA and its $500 per package liability limitation governed this action rather than the Hague-Visby Rules referenced in the bills' General Paramount Clause.[5] Foster Wheeler opposed IMC's motion, contending that the Hague-Visby Rules as enacted in Spain and their higher limitation-of-liability provision, not COGSA, governed this carriage by operation of law and by incorporation into the bills of lading, entitling it on the facts of this case to a full recovery.[6] Foster Wheeler further asserted that because Spain's Hague-Visby Rules applied compulsorily by force of law, Article III (8) of these Rules nullified any contractual term in the bills of lading -- namely, the Jurisdiction clause -- to the extent that it invoked COGSA's lower per

---

[5]"The function of the 'Clause Paramount' is to specify the law to be applied to the contract of carriage." 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 10-11 at 51(4th ed. 2004); Steel Coils, Inc. v. Captain Nicholas I M/V, 197 F. Supp. 2d 560, 563 (E.D. La. 2002) (citation omitted).

[6]IMC points out in its brief that Foster Wheeler did not assert in its original or amended complaint that "anything other than U.S. law applied." We note that Foster Wheeler did, however, fully brief the compulsory applicability of the Spanish Hague-Visby Rules in its motion in opposition to partial summary judgment on this issue. Further, the district court did not base its grant of summary judgment on any failure on the part of Foster Wheeler to amend its pleadings; rather, its determination regarding the quantum of liability was based on its conclusion that COGSA contractually displaced the compulsorily-applicable Hague-Visby scheme. This issue was therefore raised and considered by the district court and is properly before us. See Mannesman Demag Corp. v. M/V Concert Express, 225 F.3d 587, 591 & n.7 (5th Cir. 2000) (rejecting the assertion that an argument first raised in response to a motion for summary judgment is waived on appeal (citing Gilley v. Protective Life Ins. Co., 17 F.3d 775, 781 (5th Cir. 1994)).

5

package limitation.[7]  Foster Wheeler's uncontroverted summary judgment evidence included the affidavit testimony of an expert on Spanish maritime law attesting that a voyage from Spain to China is a trade line to which the Spanish enactment of the Hague-Visby Rules applies compulsorily. Nonetheless, on September 30, 2002, the district court granted IMC's motion, reasoning that the Jurisdiction clause designating "U.S. law" was a forum selection and choice-of-law clause "call[ing] for the application of COGSA" and, as such, was entitled to a presumption of validity that Foster Wheeler failed to overcome. The district court also found that, as a matter of contractual interpretation, the Jurisdiction Clause was specific, and therefore could not "be trumped by the terms of an amorphous General Paramount clause" that merely "suggest[ed] that in some circumstances the Hague-Visby rules might apply."

On October 10, 2002, Foster Wheeler filed a motion for reconsideration of the district court's grant of partial summary judgment, which the district court denied.  By  December 2002, only the proper quantum of damages remained at issue between the parties.  In order to expedite Foster Wheeler's ability to appeal the district court's summary judgment ruling, the parties filed a joint notice of consent to entry of judgment.  Accordingly, on December 9, 2002, the district court entered final

---

[7]Art. III (8) of the Hague-Visby Rules provides in pertinent part:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to, or in connection with, goods arising from negligence, fault, or failure in the duties and obligation provided in this article or lessening such liability otherwise than as provided in these Rules, shall be null and void and of no effect.

Id., reprinted in WILLIAM TETLEY, INTERNATIONAL MARITIME AND ADMIRALTY LAW  674 (2002).

judgment in favor of Foster Wheeler, calculating the quantum of damages owed under COGSA. Foster Wheeler timely filed notice of appeal.

DISCUSSION

On appeal, Foster Wheeler contests the amount of its damages award, arguing that the district court erred in determining that COGSA, rather than Spain's Hague-Visby Rules, govern the extent of IMC's liability for the cargo damage. IMC does not dispute its liability for damage to the cargo; thus, the sole issue before this Court is whether COGSA or the Hague-Visby Rules as enacted in Spain govern the carriage and hence, the quantum of damages owed by IMC.

I.      Standard of review

We review the grant of summary judgment de novo, applying the same legal standards as the district court applied to determine whether summary judgment was appropriate. Flock v. Scripto-Tokai Corp., 319 F.3d 231, 236 (5th Cir. 2003) (citing Ramirez v. City of San Antonio, 312 F.3d 178, 181 (5th Cir. 2002)). A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

II.      The contract of carriage and limitation of liability under the Hague Rules

Foster Wheeler challenges each of the district court's reasons for declining to rule that the Spanish Hague-Visby Rules' higher limitation of liability governs the calculation of damages available in this case. In support of its position, Foster Wheeler first contends that because the Spanish Hague-Visby Rules and its higher limits on liability govern this carriage compulsorily by force of law and

COGSA does not, Article III (8) of the Hague-Visby Rules invalidates the Jurisdiction clause designating "U.S. law" to the extent it contractually incorporates COGSA's inconsistent, lower limitation of liability provision. Foster Wheeler asserts in the alternative that as a simple matter of contractual interpretation, a reading of the parties' contract of carriage as a whole reveals that the Jurisdiction clause contractually invoked COGSA and its $ 500 liability limitation only during periods and for claims not governed by the Hague-Visby Rules referenced in the General Paramount Clause. According to Foster Wheeler, under either rationale, the only way to avoid rendering provisions of the bills of lading meaningless or superfluo us is to enforce the General Paramount Clause, which designates Spain's Hague-Visby Rules as the governing law of this shipment. Because we agree with the contractual interpretation advanced by Foster Wheeler, we need not address Foster Wheeler's first argument concerning the interplay between the Hague-Visby Rules' Article III (8) and COGSA's $ 500 liability limitation in order to dispose of the issue presented.

Federal courts sitting in admiralty adhere to the axiom that "'a contract should be interpreted so as to give meaning to all of its terms-- presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.'" Mannesman Demag Corp. v. M/V CONCERT EXPRESS, 225 F.3d 587, 594 (5th Cir. 2000) (quoting Transitional Learning Community, Inc. v. U.S. Office of Personnel Mgmnt., 220 F.3d 427, 431 (5th Cir.2000)). Moreover, it is well established that "'a freely negotiated private international agreement, unaffected by fraud, undue influence, or overwhelming bargaining power . . . should be given full effect.'" E.g., Afram Carriers, Inc. v. Moekyans, 145 F.3d 298, 301 (5th Cir. 1998) (quoting M/S BREMEN v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972)). The necessary corollary is that "[w]here parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that

8

choice." <u>Hawkespere Shipping Co. v. Intamex, S.A.</u>, 330 F.3d 225, 232 (4th Cir. 2003) (quoting <u>Chan v. Soc'y Expeditions, Inc</u>., 123 F.3d 1287, 1297 (9th Cir. 1997)).

The contractual agreements at issue here are the three bills of lading before us, which facially appear to be simultaneously governed by <u>two</u> choice-of-law clauses -- a Jurisdiction clause selecting "U.S. law," and a General Paramount Clause containing the following essential provisions: (1) "[t]he Hague Rules . . . as enacted in the country of shipment shall apply to this contract;" (2) if the Hague Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination applies or, if there is no such legislation, the terms of the Convention containing the Hague Rules apply; and (3) if the Hague-Visby Rules are compulsorily applicable to the trade in question, then the legislation enacting those rules applies.

It is undisputed that in this case the Hague-Visby Rules as enacted in Spain, the country of shipment, applied  <u>ex proprio vigore</u>, or compulsorily by force of law.  The Hague-Visby Rules compulsorily govern a carriage from the time the ship's tackle is hooked onto the cargo at the port of loading until the time the cargo is released from the tackle at the port of discharge ("tackle-to-tackle") whenever either (1) the bill of lading is issued in a signatory nation; (2) carriage is from a port in a signatory nation; or (3) the bill of lading references the Hague-Visby Rules. <u>See</u> <u>Hague-Visby Rules</u>, art. X, <u>reprinted in</u> William Tetley, International Maritime and Admiralty Law 679 (2002).  In this case, both Germany, where the bills of lading were issued, and Spain, the location of the ports of departure, are signatory nations.  Moreover, for "[t]rades where the Hague-Visby Rules apply . . .  compulsorily," the General Paramount Clause expressly incorporates the Hague-Visby Rules into the bills of lading.

9

The parties also agree that, absent the Jurisdiction clause designating a specific forum and providing that "U.S. law shall apply," COGSA, the United States' statutory enactment of the Hague Rules, would not apply to this shipment. COGSA only applies compulsorily during the tackle-to-tackle period to contracts for the carriage of goods to or from U.S. ports in foreign trade. 46 U.S.C. app. §1312. A carrier and a shipper may extend COGSA's application, for example, to pre-loading and post-discharge periods or to carriage between two non-U.S. ports, "but the extent of any application beyond the scope of the statute is a matter of contract." Hartford Fire Ins. Co. v. Orient Overseas Container Lines, 239 F.3d 549, 558 (2d Cir. 2000) (citing 46 U.S.C. § 1307). Consequently, if COGSA governed this carriage from Spain to China, it would do so only by contract and would not apply ex proprio vigore. See COGSA § 13, 46 U.S.C. app. § 1312; Craddock Intern. Inc. v. W.K.P. Wilson & Son, Inc., 116 F.3d 1095, 1106-07 (5th Cir. 1997) (concluding that because carriage from Venezuela to Peru "did not involve . . . shipments to or from the United States," COGSA did not govern the underlying bills of lading ex proprio vigore) (citation omitted); Croft & Scully Co. v. M/V Skulptor Vuchetich, 664 F.2d 1277, 1280 (5th Cir. 1982); 2A BENEDICT ON ADMIRALTY ch. 5 § 46 (2003). Under these circumstances, "[a]s a rule adopted by and in a contract," COGSA's provisions are merely contract terms that are "modifiable by other language contained in the bill of lading." Hartford Fire Ins. Co., 230 F.3d at 558 (citing Pannell v. United States Lines Co., 263 F.2d 497, 498 (2d Cir. 1959)).

The district court resolved what it perceived as a conflict between the Jurisdiction and General Paramount clauses by concluding that the Jurisdiction clause constituted a combined choice-of-forum and choice-of-law clause that commanded the application of the whole body of U.S. law, including COGSA and its limitation of liability provisions, at all periods of time during this carriage.

10

In defense of this ruling, IMC argues -- as it did before the district court -- that forum selection and choice-of-law clauses in international contracts must be enforced absent a showing by the opponent that the clause is the product of fraud or overreaching or is otherwise unreasonable under the circumstances, primarily relying upon M/S BREMEN v. Zapata Off-Shore, 407 U.S. 1, 10 (1972), Vimar Seguros Reaseguros v. M/V SKY REEFER, 515 U.S. 528, 541(1995), Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991), and this Court's opinion in Mitsui & Co. (USA) v. MIRA M/V, 111 F.3d 33, 35 (5th Cir.1997). According to IMC, Foster Wheeler never alleged facts nor adduced any evidence necessary to overcome this burden. This argument is unavailing.

While it is true that this Court has recognized that the presumptive enforceability rule of the Bremen and its progeny extends equally to cases involving challenges to the enforceability of arbitration clauses and combined "forum selection/choice-of-law clauses," see Mitsui & Co., 111 F.3d at 35, in this case, Foster Wheeler acquiesced to the forum selected in the bills of lading, and does not argue that the choice-of-law aspect of the Jurisdiction clause is unenforceable in toto. Rather, Foster Wheeler argues that the statement in the Jurisdiction clause that "U.S. law shall apply" means that U.S. law applies to the extent that it does not contravene the compulsorily-applicable Hague-Visby Rules referenced in the General Paramount clause. IMC has not cited, nor has our researched revealed, any authority supporting the application of this presumption to resolve a purported conflict between two choice-of-law clauses in any context, let alone in the absence of a challenge to the choice of forum. Sky Reefer, the case most on point of the trilogy of Supreme Court opinions cited by IMC, nonetheless provides little guidance in the instant matter. See 515 U.S. at 539-40. Sky Reefer involved a challenge to the enforceability of a clause calling for arbitration in Japan and the application of Japanese law in a bill of lading to which COGSA would otherwise compulsorily apply

11

by operation of law. Id. In that case, the shipper insisted that the combined arbitration and choice-of-law clause was void pursuant to COGSA's § 1303 (8) because a Japanese arbitrator would likely apply Japanese law under which the respondents' liabilities might have been less that they would have been under COGSA. Id. The Supreme Court, however, never reached the choice-of-law issue. Id. Declining to speculate as to whether a Japanese arbitrator would or would not apply COGSA, the Court concluded that the proper course in the interest of international comity was to enforce the arbitral clause to allow the foreign arbitrator to resolve the choice-of-law issue in the first instance. Id. at 539-41 (noting that "[w]hatever the merits of petitioner's comparative reading of COGSA and its Japanese counterpart, its claim is premature").

Moreover, we find that the Bremen, Carnival Cruise, and Sky Reefer are ill-suited to resolution of the choice-of-law issue presented in this case for another reason. Although IMC correctly refers to the General Paramount clause as a choice-of-law clause, IMC fails to recognize that to the extent that these cases demand, as it asserts, that the choice-of-law language in the Jurisdiction clause be accorded presumptive validity, the General Paramount clause, too, would be entitled to benefit equally from this presumption. The result, at least initially, would be a stalemate between the two clauses. Thus, even if we were to accept IMC's argument that this line of precedent supplies the appropriate standard in the instant matter, we would nevertheless remain unpersuaded that the rule of presumptive enforceability articulated in these cases dictates the contractual interpretation advanced by IMC -- namely, that the choice-of-law language in the Jurisdiction clause governs to the exclusion of and without regard to the General Paramount clause.

To the contrary, we find that the most reasonable interpretation of the parties' contract of carriage, and the one that gives effect to all of it provisions without rendering any superfluous, is that

12

the Jurisdiction clause provides for the application of U.S. law only during the periods of responsibility and to the types of claims to which the Spanish Hague-Visby Rules referenced in the General Clause paramount do not apply ex proprio vigore.[8] We therefore agree with Foster Wheeler's view that pursuant to the General Paramount clause, the Hague-Visby Rules as enacted in Spain govern claims involving cargo damage occurring during the tackle-to-tackle period, whereas U.S. law applies under the Jurisdiction clause to the litany of non-cargo maritime claims that may be brought as well as to cargo claims stemming from damage outside the tackle-to-tackle period. For example, as Foster Wheeler points out, U.S. law would govern substantive maritime claims that are neither subject to COGSA nor the Hague-Visby Rules such as claims for demurrage, products liability, general average, and pollution. Further, U.S. law would govern time limitations periods not provided for by COGSA, such as the time within which a general average claim must be brought, and would afford the plaintiff an in rem claim which is unique to U.S. law and treats the vessel as the true defendant, with rights and obligations distinct from those of its owner. See, e.g., Perez & Compania (Cataluna), S.A. v. M/V Mexico I, 826 F.2d 1449, 1450-53 (5th Cir. 1987) (concluding that Spanish law does not recognize any right to proceed directly against the vessel in rem, but does permit attachment in support of an in personam action); Martin Davies, In Defense of Popular Virtues: Personification and Ratification, 75 TUL. L. REV. 337, 339 & n. 5 (2000).

The alternative interpretation advanced by IMC asks that we construe the Jurisdiction clause as requiring the application of U.S. law and COGSA to all claims at all times, regardless of whether

---

[8]In so concluding, we distinguish the body of cases involving shipments from Hague-Visby countries to the *U.S.*, which are governed compulsorily by both COGSA and the Hague-Visby Rules. In those cases, courts must resolve on a case-by-case basis whether a particular bill of lading evidences an intent to increase the liability limits from the amount set forth in COGSA to that mandated by the Hague-Visby Rules.

13

the shipment had any connection to the United States. We decline to do so. IMC's view would not only render meaningless the entire General Paramount clause, but also would render Additional Clause B, the "U.S. Trade[] Period of Responsibility" clause, superfluous. See Mannesman Demag Corp. v. M/V CONCERT EXPRESS, 225 F.3d 587, 594 & n.17 (5th Cir. 2000) (concluding that its harmonious interpretation of the bill of lading at issue had the "benefit of not rendering superfluous the alternative liability provisions found in [the] bill of lading"). As noted above, we adhere to the maxim that, "[i]n a situation of potential contract ambiguity, an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable." See Hartford Fire Ins. Co., 230 F.3d at 558 (citation omitted). Clause B in the bills of lading provides:

> US Trade. Period of Responsibility.
>
> In case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act, then the provisions stated in said act shall govern before loading and after discharge and t hroughout the entire time the goods are in the Carrier's custody. The COGSA U.S. $500 limitation . . . shall apply to all goods shipped to and from the United States, unless . . . [t]he value of said goods has been declared . . . in the box provided [in the bill of lading] and [the] . . . Ad Valorem [rate] is paid by the merchant. . . .

An examination of Clause B reveals it supports our interpretation that the Jurisdiction clause was not intended to make COGSA apply to shipments in all trade lanes at all times. First, given that the bills of lading expressly distinguish between the law applicable in "Trades where Hague-Visby Rules [a]pply . . . compulsorily" and "U.S. Trade" lanes, as indicated by the respective headings in the General Paramount clause and Clause B, it appears that COGSA is only incorporated into the contract when the Hague-Visby Rules do not apply compulsorily or when both COGSA and the Hague-Visby Rules apply compulsorily (for example, a shipment between ports in Spain and the

14

United States). Second, the language of Clause B belies any assertion that COGSA applies at all times. We had occasion to address a substantially similar Clause B, albeit in a slightly different context, in Couthino, Caro, and Co. v. M/V SAVA, 849 F.2d 166 (5th Cir. 1988). In that case, we stated that

> Clause B does not state that the bill of lading is subject to COGSA's provisions or that COGSA is deemed to be incorporated herein. Clause B merely provides that if COGSA applies, the period of responsibility will include the entire time that the carrier has custody of the goods, including before loading and after discharge. Thus it is clear that *if* COGSA otherwise governed the bill of lading, Clause B operated to extend the duration of COGSA's effectiveness.

Couthino, Caro, and Co., 849 F.2d at 170. Similarly, we find in the Clause B before us that its qualifier "in case" COGSA applies contemplates that COGSA applies at some times but not at others. It is "well settled that a reference by contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified, . . . and that if the agreement contains qualifying words, they will be given effect, and the references limited, accordingly." Ralston Purina Co. v. Barge Juneau & Gulf Caribbean. Marine Lines, 619 F.2d 374, 376 (5th Cir.1980). We note that COGSA is referenced in only two places in the bill of lading: in Clause B, headed "U.S. Trade," and somewhat obliquely in the first paragraph of the General Paramount clause, which provides in pertinent part that the 1924 Hague Rules as enacted in the country of shipment shall apply, but if not so enacted, then the Hague Rules of the country of destination shall apply. Thus, by their terms, the bills of lading contemplate that COGSA, the U.S. enactment of the 1924 Hague Rules, will apply to all shipments from the U.S. and to shipments to the U.S. from non-Hague Rules countries.[9] In short, COGSA applies to carriage in U.S. trade lanes,

---

[9]COGSA additionally applies ex proprio vigore bidirectionally to shipments to and from U.S. ports, a circumstance not presented in this case.

15

as contemplated by Clause B and the General Paramount Clause. There can be no doubt that IMC, as the drafter of these bills of lading, could have provided for the application of COGSA at all times to the extent permissible by law had it so desired.

Our view that the parties' contract of carriage provides for the application of U.S. law by incorporation only during periods and for claims to which the Hague-Visby Rules do not apply is further supported by the terms in IMC's tariff on file with the FMC. Contrary to IMC's assertion that its tariff gave Foster Wheeler actual or constructive notice that COGSA applied to this carriage, the Jurisdiction clause in the tariff contains qualifying language that does not appear in the bills of lading. The tariff that IMC stipulated was on file prior to and at the time of contracting, provides:

> **Jurisdiction**
>
> Any dispute arising under this Bill of Lading shall be decided in the country where the carrier has his principal [sic] place of business, and the law of such country shall apply <u>except as provided elsewhere herein</u>.

Applied here, the law of the U.S. (where IMC has its principle place of business) shall apply except when the bill of lading provides that it does not apply. We find that IMC's tariff contemplates the exception to the application of U.S. law in which the General Paramount clause operates. "Considering that . . . a tariff validly filed is not a mere contract but is the law promulgating the applicable standard" which binds the carrier and shipper, we find it difficult, to say the least, to accept IMC's contention that the parties intended U.S. law to apply at all times to all types of claims. <u>See</u> <u>Brown & Root, Inc. v. M/V Peisander</u>, 648 F.2d 415, 421 (5th Cir. 1981) (citations omitted); <u>accord</u>, <u>Insurance Co. of North America v. M/V Ocean Lynx</u>, 901 F.2d 934, 939 (11th Cir.1990).

16

Finally, we are unpersuaded by IMC's attempt to defend the district court's application of the interpretive canon that specific provisions prevail over general provisions to conclude that the Jurisdiction clause designating U.S. law trumped the "amorphous" General Paramount clause. As demonstrated above, a harmonious reading of the Jurisdiction and General Paramount clauses that gives effect to all the terms in the parties' contract of carriage is readily available, rendering it inappropriate to resort to the canon of specificity. Moreover, even if we were to accept IMC's assertion that this canon should guide our interpretation of the parties' agreement, we nevertheless could not agree with IMC's view that the Jurisdiction clause is more specific than the General Paramount clause. IMC argues that the district court properly found that the Jurisdiction clause is a "precise choice of law and forum clause that clearly states the "U.S. law shall apply," whereas the "the General Paramount clause . . . is an amorphous clause [that] suggests in some circumstances the Hague-Visby Rules <u>might</u> apply." (emphasis added). This determination, however, is premised on a misapprehension of the General Paramount clause. The General Paramount clause does not "<u>suggest</u> that in some circumstances the Hague-Visby Rules <u>might</u> apply." Rather, the General Paramount clause sets forth a hierarchical scheme that specifically provides which country's version of the Hague Rules <u>shall</u> apply depending on a successively exclusive list of locations that include the places of shipment, destination, and issuance of bill of lading. <u>See</u> <u>Z.K. Marine, Inc. v. M/V Archigetis</u>, 808 F. Supp. 1561, 1566 (S.D. Fla. 1992). At the time of contracting, the triggering locale is definite and identifiable; thus, the parties are fully aware at that time of which sub-part of the paramount clause governs the contract. Indeed, the relevant ports of shipment and destination are filled in on the front of the bill of lading. As indicated above, in this case, the second paragraph of the General Paramount clause unambiguously called for the application of the Spanish Hague-

17

Visby Rules because the rules are compulsorily applicable in Spain, the country of shipment; thus, the voyage at issue was in a "trade[ lane] where Hague-Visby shall apply."

Nor does the Eleventh Circuit's decision in Itel v. Container Corp. v. M/V Titan Scan, 139 F.3d 1450 (11th Cir.1998), cert. denied, 529 U.S. 962 (1998), relied upon heavily by IMC, compel a contrary interpretation. Itel involved a cargo damage claim arising from a shipment under bill of lading from Japan to the United States, to which both U.S. COGSA and Japan's version of the Hague Rules, at that time virtually indistinguishable from COGSA, applied compulsorily. The relevant bill of lading contained a general paramount clause pointing to the application of the Japanese Hague Rules, a combined choice-of-forum and choice-of-law clause designating the application of English law (based on the carrier's principal place of business), and a typewritten clause declaring "English law to apply." After concluding that English law and its Hague-Visby Rules governed the carriage in lieu of the lower package limitation available under the otherwise compulsorily-applicable Japanese COGSA, the Eleventh Circuit observed in dicta that specific provisions take precedence over more general ones and thus "a specific clause that was added by the parties should . . . preempt the boilerplate clause paramount." Itel, 139 F.3d at 1455. In stark contrast to Itel, however, in this case the bills of lading contain no manuscript or typewritten addendum evidencing the parties' intent to depart from the standard form contract terms in their CONLINEBILL bills of lading. Indeed, far from establishing a bright-line rule regarding the interplay between paramount and jurisdiction clauses, the Itel Court considered all aspects of the contract at hand in making its determination. In this case, in the absence of any provision indicating with sufficient particularity that the parties intended to invoke COGSA during the tackle-to-tackle periods of the voyage at issue, we conclude that the Jurisdiction clause did not suffice to overcome the Hague-Visby Rules referenced in the

18

General Paramount clause. Like the Eleventh Circuit, therefore, we find that we are not presented with circumstances requiring consideration of the question whether Art. III (8) of the Hague-Visby Rules, when it applies compulsorily, nullifies a clause invoking COGSA's limitation of liability as an impermissible lessening of liability in cases in which COGSA applies merely as a contract term.

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment on liability, reverse the district court's ruling that COGSA governs the quantum of damages owed, and remand the case for a proper calculation of damages in accordance with the Hague-Visby Rules.

AFFIRMED in part, REVERSED in part, and REMANDED.