BOSTON METALS CO. *v.* THE WINDING
GULF ET AL.

No. 70. Argued March 1, 1955.—Decided May 16, 1955.

*John H. Skeen, Jr.* argued the cause for petitioner.
With him on the brief was *Eugene M. Feinblatt.*

*Charles S. Bolster* argued the cause for respondents.
With him on the brief were *Seymour P. Edgerton, Robert
Haydock, Jr.* and *Theodore R. Dankmeyer.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The petitioner, Boston Metals Company, brought this
suit in admiralty against the steam vessel *Winding Gulf*
and her owners to recover for loss of its obsolete destroyer
which sank after colliding with the *Winding Gulf.* The
collision occurred while the destroyer was being towed by
the tug *Peter Moran;* the destroyer itself was without
power or crew. The owners of the *Winding Gulf* filed
a cross-libel against petitioner, charging that the collision
was due to unseaworthiness of the destroyer. After hear-
ings, the District Court found that the collision was due
to negligent navigation by the *Winding Gulf,* to inade-
quate lights on the destroyer and absence of a crew on
the destroyer to keep its lights brightly burning. This
absence of lights and crew the District Court found was

the fault of the master of the tug *Peter Moran*. The tug master's negligence, however, was imputed to the petitioner because of provisions in the towage contract that the master and crew of the tug would become the servants of the petitioner and that the towing company would not be responsible for their negligent towage. On this basis, the District Court entered a decree in favor of the cross-libellant against petitioner which resulted in dividing the damages equally between petitioner and respondents. 72 F. Supp. 50. The Court of Appeals affirmed on the same grounds. 209 F. 2d 410. We granted certiorari. 348 U. S. 811.

In *Bisso* v. *Inland Waterways Corp.*, decided today, *ante*, p. 85, we held invalid a contract designed to shift responsibility for a towboat's negligence from the towboat to its innocent tow. That holding controls this case. For whatever this contract said, here as in the *Bisso* case, the persons who conducted these towing operations were in fact acting as employees of the towing company, not as employees of the owner of the tow. Under these circumstances it was error to hold petitioner liable for negligence of the towing company's employees. Cf. *The Adriatic*, 30 T. L. R. 699.

*Reversed.*

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.

[For opinion of MR. JUSTICE DOUGLAS, concurring, see *ante*, p. 95.]

MR. JUSTICE FRANKFURTER, concurring.

Release-from-liability clauses generally, and specifically with regard to towage contracts, are not to be applied to alter familiar rules visiting liability upon a tortfeasor for

the consequences of his negligence, unless the clarity of the language used expresses such to be the understanding of the contracting parties. Even when such a clause undeniably alters the normal relationship between tug and tow as to some aspects of liability for negligence, it is not to be construed to impose every consequence of the tug's negligence upon the tow unless the clause decisively requires this result. See *The Devonshire and St. Winifred,* [1913] P. 13; *The Richmond,* 19 T. L. R. 29 (P. D.).

The issue before us in this case is not the bare question whether the tow has contracted away its right to recover damages caused by the negligence of the tug. It is whether in addition the tow has undertaken to become directly liable to all third parties injured as a consequence of the negligence of the tug.

These are the relevant clauses governing the towage here:

"2. Tug services will be supplied upon the condition that all towing . . . of a vessel or craft of any character by a tug or tugs owned or employed by the Tug Company is done at the sole risk of such vessel or craft and of the owners, charterers or operators thereof, and that the Master and crew of such tug or tugs used in the said services become the servants of and identified with such vessel or craft and their owners, and that the Tug Company only undertakes to provide motive power.

"3. The Tug Company will not be responsible for the acts or defaults of the Master, or crew of such tug or tugs, or any of their servants or agents or else whosoever, nor for any damages, injuries, losses or delays from whatsoever cause arising that may occur either to such vessel or craft, or property or persons on board thereof, or to any other ship or vessel or property of any kind whether fixed or movable and

the Company shall be held harmless and indemnified by the Hirer against all such damages, injuries, losses and delays, and against all claims in respect thereof.

"4. Such exemption from liability shall apply regardless of whether such vessel or craft assists in the services with its own steam or power or in any other way, and irrespective of whether any employee of the Tug Company or the Master, or any of the crew of such tug or tugs is at the time of said services on board of such vessel or craft, or in command thereof.

"5. The foregoing conditions shall apply to any damages, injuries or loss from whatsoever cause arising that may occur to the vessel or craft requiring the tug or tugs or to any other vessel or craft, or to any person or property on board thereof, or to any other property whether fixed or movable, while such tug or tugs is or are in attendance upon . . . the vessel or craft . . . provided however that the said conditions shall not apply to loss or damage to the tug or tugs or to property on board the tug or tugs or to damages for personal injuries to or loss of life of members of the crews of the tug or tugs or persons on board thereof, unless such loss or damage or such damages for personal injuries or loss of life shall have been caused or contributed to by the fault or negligence of the vessel or craft requiring the tug or tugs."

Is the significance of these clauses to permit a third party injured by collision with the tow due to the negligence of the crew of the tug, to proceed directly against the owner of the tow by virtue of this clause?

The District Court refused to allow the third party to invoke the indemnity clause, but apparently held that the contract made the faults of the tug attributable to

the tow, imposing a vicarious liability upon its owner.[1] The Court of Appeals reasoned that since the tow had agreed to indemnify the tug against claims of third parties, the third party could proceed directly against the tow because "The libel was filed by the owner of the tow who had agreed to take the risk of the enterprise and pay any damages that might be incurred, and as was said by Judge Learned Hand in the Kookaburra, 2 Cir., 69 F. 2d 71, 73, 'the admiralty, whose procedure is especially plastic, can skip the by-ways and head direct for the goal.'" 209 F. 2d 410, 414.

In the absence of the contractual provisions quoted, the owner of the tow would not be liable to the third party. *Sturgis* v. *Boyer*, 24 How. 110; *The Eugene F. Moran*, 212 U. S. 466, 473. On the other hand, the tow did agree to indemnify the tug against liability in the circumstances here involved. But a promise to indemnify is a promise running to the indemnitee, here the tug, and is not ordinarily construed as a contract for the benefit of third parties. Nor does an agreement to hold another harmless against claims of third parties, if it conveys anything more than the term "indemnify," suggest that the contract was intended for the benefit of third parties.

It is true that the clause states that the members of the crew are to "become the servants of and identified with such vessel or craft" and that the tug will "not be responsible" for their acts. If in fact this were the relationship, the tow would be liable directly to third parties.

---

[1] 72 F. Supp. 50. Respondent contends that in fact the District Court held that the owners of the tow were personally negligent in entering into the arrangement without taking steps to insure that the towage would be properly performed. There are some phrases in the opinion which tend to support this view, but on the whole it is not consistent with the course of reasoning of the District Judge. It was not the view taken by the Court of Appeals, and we would not be justified in adopting it.

This was not the fact, however, and any liability of the tow to the *Winding Gulf* can only be based upon the contractual language.[2]   But the history of towage and pilotage release-from-negligence clauses suggests that this terminology is merely an attempt to phrase a disclaimer of liability applicable to a towage service in the terms of the pilotage clause successfully invoked in *Sun Oil Co.* v. *Dalzell Towing Co.*, 287 U. S. 291.   Like all attempts to describe desired legal consequences through use of inapposite concepts, the momentum of the symbolic concept may induce consequences beyond those which the true nature of the problem justifies.[3]   Placed in its commercial and judicial context, the phraseology does not sufficiently indicate an agreement to undertake direct liability to third parties.[4]   There are good reasons why this should not be undertaken, among them the fact that in a suit to which the tug is not a party it may be difficult to obtain the full assistance of the tug in establishing non-liability or avoiding an unfairly larger recovery than might have been or subsequently is had against the tug.

The only remaining question then is whether the fact that the tow owner instituted this libel against the third

---

[2] Cf. *The Adriatic and The Wellington*, 30 T. L. R. 699 (P. D.), in which the third party sued tug and tow, relying on a similar clause of the towage contract declaring the tug's crew to be servants of the tow.   The tow was held not liable.   In view of the English doctrine regarding contracts for the benefit of third parties, our problem of construction of the contract did not arise.

[3] See *Guy* v. *Donald*, 203 U. S. 399, 406: "As long as the matter to be considered is debated in artificial terms there is danger of being led by a technical definition to apply a certain name, and then to deduce consequences which have no relation to the grounds on which the name was applied."

[4] Note that the clause involved in *Bisso* v. *Inland Waterways Corp.*, *ante*, p. 85, similar to the present one in most respects, expressly states that it is not to be construed to make the owner of the tow liable to third parties.

party should permit the third party to assert as a defense, or affirmatively as a cross-libel in this case, the claim against the tug. The quotation cited by the Court of Appeals from *The Kookaburra* is not in point, for there all parties were before the court, and the question was one of contribution. In such a situation circuity of action may be avoided without the danger of injury to any of the parties. But it is no defense to an action for negligence that a claim over against an absent third party exists, and the situation is not different because the absent third party in turn would, if held liable, be entitled to indemnity from the libellant.

MR. JUSTICE BURTON, whom MR. JUSTICE REED joins, dissenting.

Recognizing the validity of the agreement that "the Master and crew of such tug or tugs used in the said [towing] services become the servants of and identified with such [towed] vessel or craft and their owners," I would give that agreement full effect. To me, the agreement is sufficient to make the tow owners directly liable to third parties for the acts of the Master and crew who thus become their servants. Accordingly, I would affirm the judgment of the Court of Appeals.