The **DOW CHEMICAL COMPANY,**
**Plaintiff-Appellee,**

v.

**M/V CHARLES F. DETMAR, JR., its**
**tackle, etc., in rem, et al.,**
**Defendants-Appellants.**

**No. 76–1405.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1976.
Decided Dec. 6, 1976.

John J. Broders, New Orleans, La., for defendants-appellants.

Robert Eikel, Houston, Tex., for plaintiff-appellee.

Before MOORE, Senior Circuit Judge,* and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This admiralty case arose from the fact that plaintiff's barge (bare-boat chartered), while being towed by defendants' tugboat collided with a bridge on the Mississippi River. Facts were stipulated and upon the basis of these and depositions the district court entered a judgment for $135,000.00, the amount of damages claimed in the complaint.

On May 9, 1973, Commercial Transport Corporation (Commercial) sent The Dow Chemical Company (Dow) a printed form towing contract containing several exculpatory clauses. On May 17, 1973, Dow's legal department approved the contract as to its form. On May 22 at 10:40 p. m., the barge, while under tow, collided with the pier of a bridge crossing the Mississippi River at Vicksburg, Mississippi. On May 23, 1973, Dow sent notice to Commercial stating that Dow intended to hold the defendant responsible for damage to the barge. On May 24, Dow signed and returned Commercial's contract. Commercial then sent Dow a letter dated May 25, 1973, which denied all liability while referring to the exculpatory terms and conditions of the towing contract.

Although the defendants contend that the court's determination that they were negligent is clearly erroneous, their principal claim for reversal on the question of liability is based upon the terms of the contract executed by the parties.

The portions of the contract pertinent to the asserted defense, in which Dow is designated as "Owner" and Commercial as "Contractor," read as follows:

5. The towage will be performed solely at the risk of the tow and its cargo, if any, including the risk of negligence of the towing craft, and its Master, pilot, officers and crew, and of the Contractor and its agents, servants, employees and representatives, all of whom in respect to the towage and in no other respect, shall become and be the agents and servants of the tow and its owner. Owner agrees to indemnify Contractor and any towing craft and the owners, charterers, operators and/or underwriters of such craft and hold such parties and craft harmless against all claims for any loss of or damage to or expense incurred in connection with the tow and/or its cargo, and from any liability to or on account of the crew or personnel of the tow because of any accident, damage, injury or loss of life of any said crew or personnel, or any loss or damage to personal effects of said crew or personnel, howsoever arising; provided, however, that nothing herein con-

* The Honorable Leonard P. Moore, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation.

tained shall be construed as rendering Owner or the tow and/or its cargo, if any, liable for any loss of, damage to, or expense in connection with the property of Contractor or any third party or for loss of life or personal injury for which Owner or the tow and/or its cargo, if any, would not otherwise be liable.

6. If the towing vessel or tow comes into collision with another vessel or object as a result of the negligence of the other vessel or object and any act, neglect or default of Contractor or the master or crew of the towing vessel for which, or for the consequences of which Contractor is not responsible to Owner of the tow and/or the cargo, if any, therein or thereon by statute or contract or otherwise, Owner and other parties having an interest in the barge and cargo shall jointly and severally indemnify Contractor against all liability to the other vessel or object or her or their owners or the owners of the cargo on the other vessel or object with respect to any payment which the Owner or some other parties have received or may be entitled to receive from such other vessel or object or her or its owners or the owners of the cargo on board the other vessel or object.

7. Owner shall cause its hull, P&I and cargo underwriters either to waive subrogation as to Contractor or make Contractor an additional assured under Owner's policies covering the said tow; any expense in connection therewith to be for account of Owner. Neither the procuring of said insurance arrangements by Owner nor its failure in that regard shall affect the other provisions of this contract, the provisions of this paragraph being primarily for the protection of Owner with respect to its insurance.

8. It is recognized and agreed by both parties hereto that the towage rate charged is based in part on the terms and conditions of this contract, without the benefits of which a higher towage rate would have been charged.

Taking the last provision first, we note that the defendants argue that Dow was securing a less expensive rate by agreeing to the preceding three paragraphs and that therefore Dow should not now be in a position to repudiate those provisions which, they say, should be read to place the risk of the particular loss on Dow. While this argument has elements of basic fairness, it will not avail the defendants if the provisions either are legally unenforceable or are not susceptible of the construction given to them by the defendants. We therefore consider the three paragraphs from those points of view.

At the outset in considering paragraphs 5 and 6 we are constrained to marvel at the tortured and meaningless lucubration which can be achieved in the English language. The concurring words of Mr. Justice Frankfurter in relation to similar language in a towing contract are relevant. "Like all attempts to describe desired legal consequences through use of inapposite concepts, the momentum of the symbolic concept may induce consequences beyond those which the true nature of the problem justifies." *Boston Metals Co. v. The Winding Gulf*, 349 U.S. 122, 127, 75 S.Ct. 649, 652, 99 L.Ed. 933 (1955). An initial difficulty in the case before us is that of ascertaining from the meandering murkiness of the language used just what the "desired legal consequences" might be. We will assume that the purpose was to avoid liability despite negligence, an assumption which probably does little violence to the actual intent in view of the decisions of the United States Supreme Court, discussed hereinafter, which would have to be circumvented if these desired legal consequences would be achieved.

In the first sentence of paragraph 5, apparently for the purpose of achieving that all risk is placed on the tow, the contract specifies that all "agents, servants, employees and representatives" of the Contractor, in respect to the towage only, shall be agents and servants of the tow. *Bisso v. Inland Waterways Corporation*, 349 U.S. 85, 95, 75 S.Ct. 629, 635, 99 L.Ed. 911 (1955), makes it clear, however, that this is an ineffective gambit. "The rule against contractual exemption of a towboat from re-

sponsibility for its own negligence cannot be defeated by the simple expedient of providing in a contract that all employees of a towboat shall be employees of the towed vessel when the latter 'employment' is purely a fiction." The applicability of *Bisso*, however, to the present case is far more sweeping than merely with regard to the use of the fictitious employment device. In that case the Supreme Court held that despite past uncertainty and differences among the circuits, contracts releasing towers from all liability for their negligence would not, because of public policy, be enforced. *Id.* at 90, 75 S.Ct. 629. This holding was reaffirmed in a per curiam opinion in *Dixilyn Drilling Corp. v. Crescent Towing & Salvage Co.*, 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78 (1963).

■ We have considerable difficulty in finding any specific undertaking in paragraphs 5 and 6 on the part of Dow to indemnify and hold harmless the Contractor for any damage to the towed barges which might result from the Contractor's negligence; yet in the absence of such an undertaking in the indemnification language these paragraphs provide no defense to the present action and if they are given the reading for which the defendants contend they cannot avoid the impact of *Bisso* and *Dixilyn* notwithstanding the utilization of rather obviously circumlocutionary verbiage. The defendants are not aided by the cases cited to us which involve the situation of third parties or of contracts of affreightment as opposed to contracts of towage with which we are here concerned. *See, e. g., Calcasieu Chemical Corporation v. Canal Barge Company*, 404 F.2d 1227 (7th Cir. 1969); *T.N.No. 73*, 1939 A.M.C. 673 (S.D.N. Y.1939), *aff'd sub nom. Commercial Molasses Corp. v. New York Tank B. Corp.*, 114 F.2d 248 (2d Cir. 1940), *aff'd*, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1941); and *Hercules Powder Co. v. Commercial Transport Corp.*, 270 F.Supp. 676 (N.D.Ill.1967). We do not intend to say that indemnification agreements will play no part in other situations in determining upon whom liability in whole or in part will ultimately rest. *See, e. g., United States v. Seckinger*, 397 U.S.

203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). We merely hold that in the towage contract situation the ambiguous indemnity language here utilized is insufficient to avoid the public policy rule established by *Bisso*.

■ The defendants also rely upon paragraph 7 of the contract and assert that Dow had an obligation to insure the barge, to obtain a waiver of subrogation from the insurer and to name the defendants as additional insureds. The defendants' reliance upon cases such as *Twenty Grand Offshore, Inc. v. West India Carriers, Inc.*, 492 F.2d 679 (5th Cir. 1974), *cert. denied*, 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 63, is misplaced. In that case the court held that a towing contract provision "requiring each party to fully insure its vessel, to effect a waiver of subrogation, and to name the other party as an additional insured is not an exculpatory clause of the type invalidated in *Bisso* and *Dixilyn*." *Id.* at 685. Here, however, the only obligation on Dow under paragraph 7 was to do certain specified things with regard to its insurance. It did not, however, in fact carry any insurance and the wording of paragraph 7 did not impose any duty upon it to do so. Further, there were no reciprocal provisions as there were in the *Twenty Grand* case.

■ We are unable to agree with the defendants that the decision of the district court finding negligence on the part of the towing company was clearly erroneous. The district court rested its decision upon the basis that the testimony of the captain and of the pilot reflected that they did not really know what happened and that this in effect was no evidence to dissolve, under *Pennsylvania Railroad Company v. S. S. Marie Leonhardt*, 320 F.2d 262, 264 (3d Cir. 1963), the presumption that those responsible for a moving vessel which strikes a known and fixed obstruction are at fault. *Georgia Ports Authority v. L/S Bilderdyk*, 402 F.Supp. 706 (S.D.Ga.1975); *The Anaconda*, 164 F.2d 224 (4th Cir. 1947); *Mid-America Transportation Company, Inc. v. National Marine Service, Inc.*, 497 F.2d 776 (8th Cir. 1974), *cert. denied*, 425 U.S. 937, 96

S.Ct. 1671, 48 L.Ed.2d 179 (1976). Further, as the district court noted, the testimony of the captain clearly indicated that the conditions found at the bridge at the time of the striking were not so unusual as to be unforeseeable. We also note the statements of the captain that "[i]t set down there further than I expected it to go," and of the pilot that "[w]e just didn't hold up quite enough, I guess." As stated above, we are unable to term the district court's decision on negligence as being clearly erroneous.

■ One matter, however, requires further proceedings in the district court. In their brief in this court the defendants assert that the case was not tried on the damage issue but only on the matter of liability; therefore the judgment in the amount of $135,000.00 must be reversed. For some reason which we do not understand the defendants did not present this claim to the district court in their post-trial motion at which time the court, assuming the assertion was correct, could easily have remedied the situation by the taking of the necessary evidence. In response to this claim in the appellate brief, Dow conceded in its brief that the trial court did misread the parties' stipulation as agreeing that Dow's damages were recoverable in their entirety, and that the appeal should lawfully be treated as an appeal from an interlocutory decree in admiralty under 28 U.S.C. § 1292(a)(3) and the case remanded for determination of damages. Dow's brief also added, however, contrary to a statement in the defendants' brief, that the witness Barringer had testified as to recoverable damages and that the only elements to be proved were that the shipyard bill Barringer identified was reasonable in amount and that the repairs shown to have been made were necessary.

On oral argument, the position of the plaintiff seems to have shifted slightly. While not retreating from the recognition that the parties understood in the trial court that the submission was upon the issue of liability only, the plaintiff also suggests that the defendants themselves in the trial court did state that they relied upon interrogatories filed by Dow together with attached exhibits, and that the exhibits embraced damages claimed totalling $130,-937.77. There was also a reference to this court taking judicial notice under Rule 201 of the Federal Rules of Evidence. Just what we are to notice is less clear, but if it is that the amounts of the repair bills were reasonable we decline with alacrity the invitation.

Without unduly prolonging the discussion of this phase of the case, we are of the opinion that under the circumstances, despite some aspects bordering upon a waiver situation, to affirm the $135,000.00 judgment would be a miscarriage of justice procedurally even though upon ultimate resolution of the amount of damages the figure may be close to that originally entered.

Accordingly, and for the reasons set out herein, the judgment of the district court is affirmed as to liability but is reversed as to the amount of damages recoverable. The case is remanded for an evidentiary hearing upon the amount of damages with both parties to have an opportunity to submit testimony appropriate to the subject if they are unable to arrive at an agreed amount. Under the circumstances of this case Circuit Rule 18 will not apply and the case will remain with the same judge upon remand. Because the matter necessitating remand in all probability could have been determined finally if it had been addressed in the defendants' post-trial motion, all costs of this appeal are to be assessed against the defendants.

Affirmed in part; reversed and remanded in part.