# United States Court of Appeals
## For the First Circuit

No. 11-2120

GREENPACK OF PUERTO RICO, INC.,

Plaintiff, Appellant,

v.

AMERICAN PRESIDENT LINES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

María I. Santos-Rivera, for appellant.
J. Ramón Rivera-Morales, with whom Jiménez, Graffam & Lausell,
was on brief for appellee.

July 6, 2012

**TORRUELLA, Circuit Judge.** Plaintiff-Appellant Greenpack of Puerto Rico, Inc. ("Greenpack") appeals the dismissal of its claim for damages resulting from a delayed delivery of perishable food items from Puerto Limón, Costa Rica to San Juan, Puerto Rico. The district court dismissed the complaint as time-barred by the statute of limitations in the Carriage of Goods by Sea Act ("COGSA" or the "Act"), Pub. L. No. 521, ch. 229, 49 Stat. 1207 (1936), reprinted in 46 U.S.C. § 30701 note (2006) (previously codified at 46 U.S.C. app. §§ 1300-1315 (2000)). Having considered the parties' claims, we affirm the district court's decision.

## I.  Background

In October of 2009, Greenpack hired Defendant-Appellee American President Lines ("APL") to ship four crates of perishable foodstuffs[1] from Costa Rica to San Juan. Although APL had promised to convey Greenpack's cargo to San Juan within seven days, it did not. The food allegedly sat on the dock in Costa Rica for a number of days before being loaded on board. The last container arrived in San Juan on November 18, 2009. Perhaps predictably, the items in the crates were no longer fit to sell upon their arrival in San

---

[1] The crates contained, inter alia, cassavas, bananas, plantains, and purple dasheen, which is a variety of tuber known colloquially in Puerto Rico as "malanga."

Juan, and the Department of Agriculture duly decommissioned all four cargos.[2]

On February 3, 2011, Greenpack filed suit against APL in the Puerto Rico Superior Court, claiming breach of contract and demanding damages for the lost cargo. On March 23, 2011, APL removed the action to the U.S. District Court for the District of Puerto Rico, and subsequently moved for dismissal or judgment on the pleadings under Rules 12(b)(6) and 12(c), respectively.

APL argued that COGSA governed the relationship between the parties and that therefore Greenpack's claim was time-barred by the Act's one-year statute of limitations. See COGSA § 3(6), 46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1303(6)) (providing that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered"). Greenpack opposed APL's argument by positing that the Harter Act, 27 Stat. 445 (1893) (codified previously at 46 U.S.C. app. §§ 190-196 and presently at 46 U.S.C. §§ 30701-30707), rather than COGSA, governed any liability arising from these shipments. Since the Harter Act contains "no specific limitations period for suits by a consignee

---

[2] The first two cargos, which arrived in Puerto Rico on October 29, 2009, were decommissioned on November 4 of the same year. The remaining two cargos arrived on November 18 and were decommissioned two days later.

against a carrier," under Greenpack's theory, its suit was not time-barred as long as it was filed within a "reasonable" time. Ins. Co. of N. Am. v. P.R. Marine Mgmt., Inc., 768 F.2d 470, 473 (1st Cir. 1985).

Greenpack's complaint had alleged in general terms that the damage to its cargo was caused by "the delay in the transportation of the same by APL." In its pleadings, Greenpack advanced the theory that the damage likely occurred during those days that the food remained on the dock in Costa Rica, prior to being loaded on the vessel. For purposes of its motion to dismiss, APL did not contest that the loss may have occurred at a point in time when the goods were in its possession prior to loading. And this fact, which we accept as true at this stage in the proceedings, Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008), is key to the parties' dispute.

The timing of the loss alleged by Greenpack is germane to the question of which statutory structure controls the parties' liability. "By its terms, COGSA governs bills of lading for the carriage of goods 'from the time when the goods are loaded on to the time when they are discharged from the ship.'" Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 29 (2004) (quoting COGSA § 1(e), 46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1301(e)) defining "carriage of goods" under the Act); see Antilles Ins. Co. v. Transconex, Inc., 862 F.2d 391, 392 (1st Cir.

1988) (noting and citing case for proposition that COGSA applies from time goods in international commerce are loaded onto a ship until they are released from the ship's tackle at port).  In other words, "COGSA applies when there is a contract for carriage of goods between a foreign port and a port of the United States," Barretto Peat, Inc. v. Luis Ayala Colón Sucrs., Inc., 896 F.2d 656, 659 (1st Cir. 1990), but only during the interval when the cargo is at sea, also referred to as the "tackle-to-tackle" period.[3] Without more, damage that occurred on the dock during the land portion of the shipment's journey, or outside of the tackle-to-tackle period (i.e., "beyond the tackles"), would escape COGSA's statute of limitations and, as Greenpack argued in its opposition to APL's motion, the Harter Act would govern.[4]

---

[3]  See Robert Force et al., Admiralty and Maritime Law: Abridged Edition 212-13 (2006) ("Tackle to tackle has traditionally meant from the moment when the ship's tackle is hooked on at the loading port until the moment when the ship's tackle is unhooked at discharge.") (quoting W. Tetley, Marine Cargo Claims 14 (3d ed. 1988)); see, e.g., Starrag v. Maersk, Inc., 486 F.3d 607, 612 (9th Cir. 2007).

[4]  The parties do not contest that the Harter Act applies ex proprio vigore beyond the tackles.  See, e.g., Schramm, Inc. v. Shipco Transp., Inc., 364 F.3d 560, 565 (4th Cir. 2004) (noting that "[t]he Harter Act, which was superseded in large part by COGSA, still applies 'prior to the time when the goods are loaded on or after the time they are discharged from the ship'") (quoting COGSA § 12, 46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1311)); see also 2A Michael F. Sturley, Benedict on Admiralty, ch. II, § 14 (2012) (indicating that "section 12 of COGSA explicitly preserves the Harter Act from implied repeal to the extent that it governs the carrier's duties" before loading and after discharge).  We assume as much for purposes of this appeal.

As recognized by the district court, however, "the parties to a shipping contract may agree to extend [COGSA's] coverage to the period before loading or after unloading of the goods." Ins. Co. of N. Am., 768 F.2d at 475. See Kirby, 543 U.S. at 29 (noting that "COGSA [] gives the option of extending its rule by contract" to cover "the entire period in which [the goods] would be under [a carrier's] responsibility, including the period of the inland transport") (citing COGSA § 7, 46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1307)).[5] The issue before the district court was therefore whether the bills of lading in this case extended the time-for-suit provision of COGSA to the period when the damage allegedly occurred, i.e., prior to loading the cargo on board the ship.

Although the four containers of perishable food were shipped separately, they were governed by identical bills of lading, all of which were referenced in the complaint. APL successfully argued before the district court that these bills of lading contained a "Paramount Clause" that specifically incorporated COGSA to cover the period prior to loading and after discharge.

---

[5] The cited provision of COGSA states that "[n]othing contained in this [Act] shall prevent a carrier or a shipper from entering into any agreement . . . as to [the parties'] responsibility and liability . . . [arising from] the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea."

The relevant language is contained in subsection (iv) of the Paramount Clause, which reads in pertinent part as follows:

> Prior to loading onto the Vessel and after discharge from the Vessel or if the stage of Carriage during which the loss or damage to Goods occurred cannot be proved, the Carrier's liability shall be governed under the Hague Rules, except that the limitation shall be US$500 per package or per shipping unit as stated in [the bill of lading's "Package Limitation" clause], and for this purpose the Hague Rules shall be extended to the periods before loading and sub-sequent [sic] to discharge and to the entire period of the Carrier's responsibility.

As the district court noted, the Paramount Clause in the bills of lading explicitly references COGSA's relationship to the Hague Rules[6] in its subsection (i), which states that, for the tackle-to-tackle period,

> the Carrier's responsibility shall be subject to the provisions of any legislation compulsorily applicable to this Bill of Lading [] which gives effect to the Hague Rules . . . including adaptations thereof, such as [COGSA], the provisions of which shall apply on all shipments to or from the United States whether compulsorily applicable or not . . . .

---

[6] The "Hague Rules" are formally known as the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, August 25, 1924, 51 Stat. 233, 120 U.N.T.S. 155, and were promulgated to standardize the rules governing ocean carriers' liability for negligence. See generally Hanover Ins. Co. v. Shulman Transp. Enters., Inc., 581 F.2d 268, 270-72 (1st Cir. 1978) (examining COGSA's origins). COGSA is the United States' domestic enactment of the Hague Rules, which the United States ratified in 1937. Id. at 271 n.6.

Although the district court did not rely on the following additional language, we note as relevant to the parties' dispute subsection (i) of the Package Limitation clause in the bills of lading, which reads as follows:

> For shipments to and from the United States, neither the Carrier nor the Vessel shall in any event become liable for any loss of or damage to or in connection with the Carriage of Goods in an amount exceeding US$500 (which is the package or ship-ping [sic] unit limitation under []COGSA) per package or in the case of Goods not shipped in packages per customary freight unit.

This clause further states that "[it] applies in addition to and shall not be construed as derogating from any defense or exclusion, restriction or limitation of liability available to the Carrier under the terms of this Bill of Lading or otherwise." The bills of lading also contained a "Notice of Loss, Time Bar" provision establishing that

> [t]he Carrier shall in any event be discharged from all liability whatsoever in respect of the Goods, unless suit is brought in the proper forum and written notice thereof received by the Carrier within nine months after delivery of the Goods or the date when the Goods should have been delivered.

In its order, dated August 10, 2011, the district court granted APL's motion for dismissal or judgment on the pleadings, finding that, per the Paramount Clause in the bills of lading, Greenpack's claims were subject to COGSA's one-year statute of limitations. Since suit was filed more than one year after the

-8-

delivery of the cargo, the same was found to be time-barred.  This

appeal ensued.

## II.  Discussion

Greenpack's contention on appeal is that the bills of

lading did not extend COGSA's time-for-suit provision to cover the

time prior to loading because the language in the Paramount Clause

incorporated only the liability provision of COGSA and not its

statute of limitations.[7]  APL, in turn, argues that a plain reading

of the contractual language at issue reveals the parties' intention

to extend COGSA's provisions in full to the period in question.

### A.  Standard of Review

"We review dismissals under Rule 12(b)(6) and judgments

on the pleadings under Rule 12(c) de novo."  Gray, 544 F.3d at 324.

---

[7]  Greenpack also suggests that COGSA relates only to issues of
seaworthiness, and so cannot apply to this breach of contract case.
Greenpack's claim is waived, as Greenpack summarily advances the
argument, citing to no pertinent authority.  See P.R. Tel. Co. v.
T-Mobile P.R. LLC, 678 F.3d 49, 58 n.5 (1st Cir. 2012).  In any
event, Greenpack's argument fails on its own terms, as it is
evident that COGSA applies to the type of claim Greenpack advances.
COGSA makes clear that "under every contract of carriage of goods
by sea, the carrier in relation to the loading, handling, stowage,
carriage, custody, care, and discharge of such goods, shall be
subject to the responsibilities and liabilities and entitled to the
rights and immunities [] set forth" in the Act.  COGSA § 2, 46
U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1302).
COGSA requires carriers to "properly and carefully load, handle,
stow, carry, keep, care for, and discharge the goods carried."
Id. § 3(2) (previously codified at 46 U.S.C. app. § 1303(2)).  By
its terms, COGSA governs instances of "loss or damage" to goods
that are the subject of contracts of carriage by sea, and precludes
liability for such losses and damages unless suit is brought within
a year.  Id. § 3(6) (previously codified at 46 U.S.C. app.
§ 1303(6).

Likewise, the question of whether (and to what extent) the bills of lading in this case extended the dispositions of COGSA to cover the parties' relationship beyond the tackles is a matter of contract interpretation, and thus a "question of law" that is reviewed de novo. See OfficeMax, Inc. v. Levesque, 658 F.3d 94, 97 (1st Cir. 2011) ("Contract interpretation, when based on contractual language without resort to extrinsic evidence, is a 'question of law' that is reviewed de novo.") (citing Principal Mut. Life Ins. Co. v. Racal-Datacom, Inc., 233 F.3d 1, 3 (1st Cir. 2000)). As we conduct our review, "we view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." Gray, 544 F.3d at 324. In doing so, we may consider, in addition to the complaint, any documents -- such as bills of lading -- if their authenticity is not disputed by the parties, if they are central to the plaintiff's claims, or if they are sufficiently referenced in the complaint. See Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).

**B. Extension of COGSA Beyond the Tackles**

As previously noted, a carrier and a shipper may extend COGSA so that it applies prior to loading and subsequent to the discharge of the goods from the vessel. See COGSA § 7, 46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1307); Ins. Co. of N. Am., 768 F.2d at 475. To determine the extent of any extension of COGSA beyond the scope of the statute, we must look to

-10-

the parties' intent as expressed in the bills of lading. See Kirby, 543 U.S. at 31 ("[C]ontracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties."); Henley Drilling Co. v. McGee, 36 F.3d 143, 148 n.11 (1st Cir. 1994) ("Since the bill of lading is the contract of carriage between shipper and carrier, familiar principles of contract interpretation govern its construction.") (citations omitted).

Greenpack contends that a plain reading of the Paramount Clause demonstrates that the parties meant to incorporate COGSA solely for the purpose of limiting the carrier's liability to $500, per COGSA's limitation of liability provision. See COGSA § 4(5), 46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1304(5)) (limiting the liability of a carrier "for any loss or damage to or in connection with the transportation of goods" to "$500 per package"). We find Greenpack's reasoning unpersuasive.

The Paramount Clause here has two relevant subsections, (i) and (iv). The first of these sets out the law that will govern the rights of the parties "[f]rom loading of the Goods onto the Vessel until [their] discharge," i.e., tackle-to-tackle, while the second identifies the applicable law "[p]rior to loading onto . . . and after discharge from the Vessel," i.e., beyond the tackles. As to the latter, subsection (iv) plainly indicates that, during that time, "or if the stage of Carriage during which the loss or damage

-11-

to Goods occurred cannot be proved, <u>the Carrier's liability shall</u> <u>be governed under the Hague Rules</u>, except that the limitation shall be US$500 per package or per shipping unit as stated in [the bill of lading's Package Limitation clause] . . . ." (Emphasis added.) As we explained <u>supra</u>, COGSA is the United States' domestic enactment of the Hague Rules, <u>see</u> <u>Hanover Ins. Co.</u>, 581 F.2d at 270-72, and the parties acknowledge the same in subsection (i) of the Paramount Clause itself. Therefore, a natural reading of the quoted language from subsection (iv) leads us to conclude that the parties intended a general extension of the provisions of COGSA to govern all issues relating to the carrier's liability arising during the period beyond the tackles, which would include the Act's time-for-suit provision.[8]

Greenpack focuses on the phrase in subsection (iv) of the Paramount Clause that begins with "except" and establishes a per package limitation of "US$500" to the liability of the carrier. According to Greenpack, this qualifying phrase was meant to narrow the preceding, more general language incorporating COGSA. As APL argues, however, such language is not unusual in this context.

---

[8] Even if one were to read the language in subsection (iv) as extending the Hague Rules, rather than COGSA, to the period beyond the tackles, the result in this case would be the same, as "[t]he language of COGSA mirrors that of the [Hague Rules], with only a few deviations," none of which are relevant here. <u>Hanover Ins.</u> <u>Co.</u>, 581 F.3d at 271 n.6; <u>see also</u> <u>In re Damodar Bulk Carriers,</u> <u>Ltd.</u>, 903 F.2d 675, 681 (9th Cir. 1990) (finding no error in the district court's application of COGSA rather than the Hague Rules, since the two are "virtually identical in their language").

Moreover, we do not believe the qualifying phrase was meant to operate as a continuum of the first part of the sentence to confine COGSA's application solely to setting the package limitation rule.

The inclusion of a package limitation clause equivalent to the one contained in COGSA, even where the Act applies ex proprio vigore, appears to be common in contracts for international carriage. See 2A Michael F. Sturley, Benedict on Admiralty, ch. XVI, § 166, at n.20 (2012) (indicating that "[m]ost carriers have [] decided to include an explicit limitation clause in the bill of lading" despite the plain language of COGSA's section 4(5) limiting the carrier's liability in a similar manner, "[t]o ensure that courts actually enforce their rights under [the Act]"). We note that section 4(5) itself states that the $500 limit will apply "unless the nature and value of [the goods in carriage] have been declared by the shipper before shipment and inserted in the bill of lading." 46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1304(5)). Thus, the shipper retains the right to avoid the limitation by declaring a higher value, and a carrier who does not provide adequate notice of this possibility does so at his own peril. See, e.g., Henley Drilling Co., 36 F.3d at 144-47 (considering, without embracing, other circuits' requirement under COGSA that carriers afford shippers a "fair opportunity" to declare their cargo's value; enforcing Act's limit on liability only after concluding that combination of paramount clause incorporating COGSA

and a valuation clause mimicking section 4(5) in the bill of lading afforded shipper both constructive and actual notice of the provision's applicability).

Indeed, parties to a contract of carriage governed by COGSA may agree on a higher amount as the limit on liability. See COGSA § 4(5), 46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1304(5)) (providing that "[b]y agreement between the carrier . . . and the shipper another maximum amount . . . may be fixed," provided that "such maximum" is not less than the $500 set by the Act); see also Hanover Ins. Co., 581 F.2d at 271-73 & n.6 (concluding that COGSA's $500 limitation of liability provision, which "mirrors" that of the Hague Rules, is a "minimum level of valuation . . . . that cannot be reduced by contractual agreement") (second emphasis added). Other countries may also impose higher amounts as the carrier's minimum liability. See 8 Michael F. Sturley, Benedict on Admiralty, ch. XVI, § 16.11(B)(6)(c) (2012) ("Because foreign statutes comparable to COGSA often impose greater liability on the carrier, particularly foreign enactments of the Hague-Visby Rules,[9] cargo claimants have sometimes argued that the

---

[9]  The "Hague-Visby Rules" are the Hague Rules as amended by two protocols, the 1968 Visby Amendments and the 1979 "SDR" Protocol. See 2A Michael F. Sturley, Benedict on Admiralty, ch. I, § 1, at n.3 (2012).  These rules were never ratified by the United States, and they impose a higher limitation on the liability of carriers. See id. § 3 (noting that "most [] major U.S. trade partners" are now parties to the Hague-Visby Rules).

limitation provisions of a foreign statute should apply in preference to COGSA's.").

In light of this, it seems to us perfectly reasonable for a carrier such as APL to be motivated to set a specific limit on its potential liability -- in addition to language incorporating COGSA as applicable beyond the tackles -- that (re)states the COGSA minimum as its standard. Such language would tend to avoid possible confusion and ensure a uniform limitation on liability that would apply (regardless of divergences between different countries' domestic enactments) in every jurisdiction where suit might be brought in connection with APL's shipments. See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727, 728 (1st Cir. 1994) (noting that passage of COGSA "was part of an international effort to achieve uniformity and simplicity in bills of lading used in foreign trade," and also "to reduce uncertainty concerning the responsibilities and liabilities of carriers, responsibilities and rights of shippers, and liabilities of insurers"). While the "except" language in subsection (iv) of the Paramount Clause operates to qualify the general incorporation of COGSA to the period beyond the tackles, it does so only as an attempt to clarify and make certain the amount of liability per package that APL would be subject to in the event of suit.

Greenpack suggests in its briefing that not all of COGSA should be applicable in this case because the bills of lading "did

not make references to all the provisions of [the Act]," citing to Ralston Purina Company v. Barge Juneau and Gulf Caribbean Marine Lines, Inc., 619 F.2d 374 (5th Cir. 1980) (per curiam).  However, that case in no way supports the proposition that a contract must recite all of the elements of a law that the parties would like to incorporate, where instead (as in this case) they could make a general reference to the statute in the contract and then specify limited exceptions or clarifications to the same.[10]

Greenpack also contends that the language used by APL (as the drafter of the bills of lading) to extend COGSA beyond the tackles could have been clearer, pointing to language in other cases.  See, e.g., Firestone Tire & Rubber Co. v. Almacenes Miramar, Inc., 452 F. Supp. 670, 672 (D.P.R. 1978) (contract stated that "[the] bill of lading shall have effect subject to the provisions of [COGSA] . . . while [the goods] are in the custody of

---

[10]  Indeed, the question in Ralston was whether inclusion in the bill of lading of a separate notice of suit provision, in addition to the general incorporation of COGSA through a paramount clause, made COGSA's statutory time-for-suit provision inapplicable. 619 F.2d at 374-76.  The court so held, relying on the fact that the paramount clause indicated that COGSA would apply "except as may be otherwise specifically provided" in the bill of lading. Id. at 375.  The court concluded that the separate notice of suit provision constituted such an exception. Id.  We note that Greenpack does not make an analogous claim in this case; the parties contested solely the theory of whether COGSA's statute of limitations applied to bar suit by virtue of the Paramount Clause. As is discussed infra, Greenpack made only cursory reference throughout this litigation to the Notice of Loss, Time Bar provision in the bills of lading, which itself called for a shorter notice and filing period of nine months.

the vessel or its agents"); see also Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd., 32 F.3d 1244, 1250 (8th Cir. 1994); Ins. Co. of N. Am., 768 F.2d at 475 n.7; Fireman's Ins. Co. of Newark, N.J. v. Gulf P.R. Lines, Inc., 349 F. Supp. 952, 955 (D.P.R. 1972); Commw. of P.R. v. Sea-Land Serv., Inc., 349 F. Supp. 964, 969 (D.P.R. 1970). We do not see how the language at issue in the cited cases is necessarily "clearer" than the language APL used in the bills of lading relating to this case, except for the fact that they do not include the same qualifying language regarding the limitation on liability provision that is present here. We have already explained our position regarding the effect of such language supra. Moreover, the fact that other contracts for carriage at sea have simply incorporated COGSA over the entire period while the goods are in the carrier's custody does not mean that APL and Greenpack were precluded in this case from setting up a scheme of coverage that differentiated between the tackle-to-tackle interval and the period beyond the tackles; and notably, Greenpack does not advance such an argument.[11]

---

[11] Greenpack's reliance on Foster Wheeler Energy Corporation v. An Ning Jiang MV, 383 F.3d 349 (5th Cir. 2004) is unavailing. Foster Wheeler dealt with the interplay of two choice-of-law clauses in bills of lading for carriage between Spain and China that raised the question whether COGSA or Spain's adoption of the Hague-Visby Rules applied to the tackle-to-tackle period. See id. at 352 n.4. The court held, as a matter of contractual interpretation, that Spain's Hague-Visby Rules controlled despite a clause selecting a U.S. jurisdiction as the choice of forum. Id. at 357. We fail to see the relevance of this case to the issue at hand.

-17-

Greenpack next appeals to the principle that contracts purporting to grant immunity from, or limitation of, liability must be strictly construed. See Boston Metals Co. v. The Winding Gulf, 349 U.S. 122, 123-24 (1955) (Frankfurter, J., concurring) ("Release-from-liability clauses . . . are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, unless the clarity of the language used expresses such to be the understanding of the contracting parties."); see also Robert C. Herd & Co. v. Krawill Mach. Corp., 359 U.S. 297, 302-05 (1959) (refusing to read an extension of COGSA to limit the common-law liability of a negligent stevedore to $500 where neither COGSA nor the bill of lading adverted to stevedores or the carrier's agents); but cf. Kirby, 543 U.S. at 31 (noting that Herd does not require a special degree of "linguistic specificity" in contracts for carriage of goods by sea, and only calls for them to be construed "by their terms and consistent with the [parties'] intent"). Whether or not a higher standard applies to the review of contractual limitations on liability in this context, a question we need not answer today, we believe the outcome would be the same here because the contractual language at issue is clear and admits no other interpretation. See Kirby, 543 U.S. at 32 ("'[W]here the words of a law, treaty, or contract, have a plain and obvious meaning, all construction, in hostility with

-18-

such meaning, is excluded.'") (quoting Green v. Biddle, 21 U.S. (8 Wheat.) 89-90 (1823)).

Finally, Greenpack makes a one-sentence assertion in its brief, unsupported by legal references, that its claim should not be dismissed as untimely because "[u]nder the Harter Act, the doctrine of laches applies," and APL suffered no prejudice from Greenpack's delay in presenting suit. It suggests that this is so because Greenpack alleged in its complaint that it sent an extrajudicial notice to APL, which (it later clarified) had been sent within nine months of the delivery of the goods, as required by the Notice of Loss, Time Bar provision in the bills of lading.[12] At oral argument, Greenpack provided a case citation to support its point. See TAG/ICIB Servs., Inc. v. Sedeco Servicio de Descuento en Compras, 570 F.3d 60, 63 (1st Cir. 2009) (applying principle that "'[i]n [] admiralty case[s], maritime law and the equitable doctrine of laches govern the time to sue'" to determine a

---

[12] Greenpack's counsel indicated at oral argument that the extrajudicial claim was sent on June 9, 2010, which was approximately seven months after delivery of the last two cargos by APL, on November 18, 2009. Surprisingly, Greenpack did not argue below, nor is it reflected in its papers on appeal, that this extrajudicial notice tolled the applicable limitations period. Counsel for Greenpack introduced a tolling claim for the first time in this case during appellate oral argument. Unfortunately for Greenpack, however, we have not been presented here with any reason to disturb "the bedrock rule of appellate practice that, except in the most extraordinary circumstances (not present here), matters not raised in the trial court cannot be hawked for the first time on appeal." Malave v. Carney Hosp., 170 F.3d 217, 222 (1st Cir. 1999). Greenpack's failure to raise a tolling argument before the district court requires that we consider it relinquished on appeal.

limitations period for a suit involving overdue demurrage charges on international shipments to Puerto Rico) (quoting TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., 215 F.3d 172, 175 (1st Cir. 2000)). Besides this, Greenpack did little to elaborate its theory, explain to the court how it should apply this equitable doctrine to the case at hand, or illustrate why we should bypass both the statutory limitations period that would otherwise apply per the Paramount Clause, or the contractual Notice of Loss, Time Bar provision that Greenpack itself references. The argument put forth by Greenpack is so undeveloped on appeal that we must consider the same waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (employing "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by [] developed argumentation, are deemed waived"); see also Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 40 n.9 (1st Cir. 2006) (refusing to consider an equitable tolling argument "not raised below [and] developed only perfunctorily on appeal").

### III. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.