# United States Court of Appeals
## For the First Circuit

No. 12-1757

JARDÍN DE LAS CATALINAS LIMITED PARTNERSHIP
AND JARDÍN DE SANTA MARIA LIMITED PARTNERSHIP,

Plaintiffs, Appellants,

v.

GEORGE R. JOYNER, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR
OF THE PUERTO RICO HOUSING FINANCE AUTHORITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]
[Hon. Camille Vélez-Rivé, U.S. Magistrate Judge]

Before

Thompson, Baldock[*]* and Selya,
Circuit Judges.

Ignacio Fernández de Lahongrais, with whom Bufete Fernández &
Alcaraz, C.S.P. was on brief, for appellants.
Tomás A. Román-Santos, with whom José L. Ramírez-Coll and
Fiddler, González & Rodríguez, PSC were on brief, for appellee.

September 12, 2014

[*]Of the Tenth Circuit, sitting by designation.

**SELYA, Circuit Judge.** This is what might be called a "pick your poison" case. In the proceedings below, the district court identified three justifications supporting its grant of judgment on the pleadings: waiver, untimeliness, and the absence of a constitutionally protected property interest in the tax credits sought by the plaintiffs. Although all of these avenues appear promising, principles of judicial economy and restraint counsel that we write no more broadly than is necessary to resolve this appeal.

When we conduct the necessary triage, what jumps off the page is the tardiness of the plaintiffs' action. We therefore train our sights on this facet of the district court's decision. Concluding, as we do, that the plaintiffs' action was brought outside the applicable limitations period and that equitable tolling does not rescue it, we affirm.

## I.  BACKGROUND

We start with a brief exposition of the relevant statutory scheme. Section 42 of the Internal Revenue Code provides for tax credits designed to encourage investment in low-income housing. See I.R.C. § 42, 26 U.S.C. § 42. The statute requires each state agency to develop a qualified allocation plan, see id. § 42(m)(1)(B), and gives such agencies broad discretion to determine whether and to whom the credits will be allocated, see Barrington Cove Ltd. P'ship v. R. I. Hous. & Mortg. Fin. Corp., 246

-2-

F.3d 1, 5-6 (1st Cir. 2001). The allocation of such credits to particular taxpayers occurs through the issuance, annually, of Internal Revenue Service (IRS) 8609 forms. See Treas. Reg. § 1.42-1(h).

The amount of the annual credit is equal to the "applicable percentage" of the "qualified basis" of a covered project. See I.R.C. § 42(a). The qualified basis is determined with reference to (among other things) the cost of development and the ratio of low-income units to other units in the project. See id. § 42(c)(1), (d). For projects like those at issue here, the applicable percentage is a rate calculated to yield, over a ten-year period, a credit of 70% of the present value of the qualified basis. See id. § 42(b)(1)(B)(i). For any given project, this percentage typically is locked in either upon the execution of a binding agreement between the state agency and the taxpayer or when the building is placed into service. See id. § 42(b)(1).

Even though such allocation agreements are binding, the ultimate award of credits is subject to the state agency's assessment of financial feasibility. See Treas. Reg. § 1.42-8(a)(5). The agency may reduce the previously agreed credit amount if, after considering certain factors, it determines that the project would be financially viable without the full subsidy. See id.; I.R.C. § 42(m)(2).

Against this backdrop, we turn to the case at hand. Because this case was decided on a motion for judgment on the pleadings, we assume the accuracy of the well-pleaded facts and supplement those facts by reference to documents incorporated in the pleadings and matters susceptible to judicial notice. See Greenpack of P.R., Inc. v. Am. President Lines, 684 F.3d 20, 25-26 (1st Cir. 2012); see also Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000).

The plaintiffs, Jardín de las Catalinas Limited Partnership and Jardín de Santa Maria Limited Partnership, each own an apartment building in Puerto Rico that qualifies (under section 42) for low-income housing tax credits. The defendant is the Executive Director of the Puerto Rico Housing Finance Authority (the PRHFA), which is the agency responsible for allocating these credits in Puerto Rico.[1]

The events giving rise to this appeal began when the plaintiffs and the PRHFA entered into so-called carryover allocation agreements (the Agreements) setting the applicable percentage for their covered projects at 8.12%. Based on this rate and estimates of each project's qualified basis, the Agreements provided each plaintiff with a projected tax-credit allocation of more than $1,000,000 annually.

---

[1] For purposes of the statutory scheme, Puerto Rico is treated as a state. See I.R.C. §§ 42(h)(8)(B), 7701(d). The PRHFA is, therefore, the functional equivalent of a state agency.

Congress thereafter passed the Housing and Economic Recovery Act of 2008 (HERA), Pub. L. No. 110-289, 122 Stat. 2654. Among its constellation of provisions, HERA amended section 42 to provide temporarily that the applicable percentage for developments such as those owned by the plaintiffs "shall not be less than 9 [%]." Id. § 3002(a)(1), 122 Stat. at 2879 (codified at I.R.C. § 42(b)(2)). The new 9% floor applied even to taxpayers, like the plaintiffs, who previously had agreed to lower applicable percentages. See I.R.S. Notice 2008-106, 2008-49 I.R.B. 1239 (Dec. 8, 2008).

The plaintiffs allege that, under the HERA amendment, they were entitled to additional credits aggregating over $278,000 annually for their two projects combined.[2] The plaintiffs further aver that, on April 15, 2010, the PRHFA delivered to them over 300 IRS 8609 forms, each corresponding to a particular apartment unit within one of the covered projects. On each form, line 1b specified the dollar amount of the tax credit allocated to the particular unit; line 2 specified the applicable percentage (9%); and line 3a specified the qualified basis for that unit. The plaintiffs signed the forms and submitted them to the IRS on the same day, apparently without regard to whether the total of the credits matched their expectations.

_____

[2] This amount represents the product of the increase in applicable percentage from 8.12% to 9%, applied to the qualified bases stipulated in the Agreements.

As matters turned out, the PRHFA had allocated to the plaintiffs the exact amount of credits specified in the Agreements, and no more. To reach this figure, the PRHFA had reduced the qualified basis for each unit such that, when multiplied by the new 9% rate required by HERA, no additional credits were due.

Some months elapsed before the plaintiffs, on November 5, 2010, sent an e-mail to the PRHFA bringing this perceived discrepancy to its attention. In an e-mailed response dated November 8, the agency confirmed its calculation methodology and stood by the amount of the allocation.[3]

On April 19, 2011 — more than one year after they signed and forwarded the IRS 8609 forms to the IRS — the plaintiffs repaired to the federal district court. Invoking 42 U.S.C. § 1983, they sought declaratory and injunctive relief against the defendant in his official capacity, charging that the PRHFA had unlawfully seized the additional tax credits to which they ostensibly were entitled under HERA. The defendant answered, denying that any unlawful seizure of tax credits had transpired.

In due course, the defendant moved for judgment on the pleadings, see Fed. R. Civ. P. 12(c), asserting that the plaintiffs' action was time-barred and that, in all events, the

---

[3] These e-mails, which are in Spanish, were not translated into English as required by First Circuit Rule 30.0(e). Because their content does not affect our decision, we adopt the plaintiffs' characterization of them.

plaintiffs had no cognizable property interest in any additional tax credits. The motion was referred to a magistrate judge, who granted the plaintiffs an extension of time within which to file an opposition. However, the plaintiffs failed to file their opposition within the extended period. The magistrate judge then issued a report and recommendation, urging that the defendant's unopposed motion for judgment on the pleadings be allowed.

The plaintiffs unsuccessfully moved for reconsideration. They also filed objections to the magistrate judge's report and recommendation. See Fed. R. Civ. P. 72(b)(2). The district court overruled these objections, accepted the magistrate judge's recommendation, and granted the defendant's motion for judgment on the pleadings. See Jardín de las Catalinas Ltd. P'ship v. Joyner, 861 F. Supp. 2d 12, 18 (D.P.R. 2012). This timely appeal followed.

## II. ANALYSIS

For simplicity's sake, we do not hereafter distinguish between the district judge and the magistrate judge but, rather, take an institutional view and refer to the determinations below as those of the district court. We review a district court's entry of judgment on the pleadings de novo.[4] See Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 37 (1st Cir. 2004). The applicable

---

[4] Noting that the plaintiffs failed to file a timely opposition before the magistrate judge, the defendant contends that our review should be for plain error. Because the decision below easily survives de novo review, we need not address this contention.

standard of review is identical to the standard of review for motions to dismiss for failure to state a claim under Rule 12(b)(6). See Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007).

The district court discussed three possible justifications for the entry of judgment on the pleadings: waiver, untimeliness, and the absence of any cognizable property interest in the additional tax credits. It would serve no useful purpose to explore all of these avenues. Where a trial court decides a case on alternative theories, each of which is independently sufficient to ground its judgment, a reviewing court completes its work when it determines that any one of those theories is fully supportable. So it is here: the plaintiffs' action is plainly time-barred, and we go directly to that dispositive point.

A limitations defense may be asserted through a motion for judgment on the pleadings when it appears on the face of the properly considered documents that the time for suit has expired. See Rivera-Gomez v. de Castro, 843 F.2d 631, 632 (1st Cir. 1988); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004). Here, we consider not only the pleadings but also the IRS 8609 forms and the Agreements (all of which are relied upon in the complaint).

The plaintiffs brought this suit under 42 U.S.C. § 1983, which creates a private right of action to redress the deprivation

of federally protected rights at the hands of state actors.  Since section 1983 does not contain a built-in statute of limitations, courts borrow the forum state's statute of limitations for personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 279-80 (1985); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992).  The parties agree that the Puerto Rico limitations period for personal injury actions is one year, exclusive of the date of accrual.  See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (citing P.R. Laws Ann. tit. 31, § 5298(2)).

Unlike the limitations period, the date of accrual is determined strictly in accordance with federal law.  See Rivera-Muriente, 959 F.2d at 353.  A section 1983 claim normally accrues at the time of the injury, when the putative "plaintiff has a complete and present cause of action" and can sue.  Wallace v. Kato, 549 U.S. 384, 388 (2007) (internal quotation marks omitted); see Randall v. Laconia, N.H., 679 F.3d 1, 6 (1st Cir. 2012).  But to the extent that the facts necessary to bring a claim are unknown, the discovery rule may delay accrual until such facts "are or should be apparent to a reasonably prudent person similarly situated."  Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 119-20 (1st Cir. 2003) (internal quotation mark omitted).  Typically, the discovery rule comes into play either when the injury has lain dormant without manifestation or when "the facts about causation

[are] in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." United States v. Kubrick, 444 U.S. 111, 122 (1979); see McIntyre v. United States, 367 F.3d 38, 55-56 (1st Cir. 2004).

Here, the parties' dispute centers on when the one-year period began to run. The injury is the supposed seizure of tax credits. A claim for such an injury usually accrues on the date of the wrongful appropriation. See Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70 (1st Cir. 2005) (citing cases). Taking the plaintiffs' complaint at face value, they suffered harm and had "a complete and present cause of action" when the PRHFA, without notice, unilaterally lowered the qualified bases used in connection with the various IRS 8609 forms and thereby allocated less munificent tax credits than the plaintiffs expected. Wallace, 549 U.S. at 388 (internal quotation marks omitted).

This much is not controversial; what is controversial is whether the plaintiffs knew or reasonably should have known of the injury at the time the seizure occurred. It is this controversy that we must resolve.

The plaintiffs received, signed, and forwarded to the IRS the offending forms on April 15, 2010. The forms were easy to read: each form consisted of a single page and supplied, unit by unit, an allocated credit amount, the applicable percentage, and the qualified basis. The sum of these unit-by-unit allocations

-10-

represented the total allocation for the covered buildings. With some simple arithmetic, the plaintiffs easily could have determined, then and there, that the PRHFA had short-changed them by allocating significantly less munificent tax credits than HERA allegedly required. As their complaint acknowledges, the PRHFA methodology was transparent: the sum of the "qualified basis" lines on the various IRS 8609 forms is equal to the agreed (pre-HERA) credit amount divided by 9% (the "applicable percentage" specified in each form).

Given this mise-en-scène, we discern no error in the district court's conclusion that the plaintiffs, on April 15, 2010, knew or should have known all the facts necessary to prosecute their claim. The limitations clock started on April 15, 2010, when the plaintiffs were apprised of their injury and the defendant's causal connection to that injury. See Kubrick, 444 U.S. at 122-23. From that point forward, it was up to the plaintiffs to connect the dots.

The plaintiffs argue that the large number of forms (341 or so) complicated their task and masked what the PRHFA was doing. This argument is hopeless. The plaintiffs are business entities that had hundreds of thousands of dollars at stake, and adding up the tax credits on the forms was an exercise in simple arithmetic that any middle-schooler could have performed in a matter of hours.

In an effort to efface this reasoning, the plaintiffs seek refuge in the discovery rule. The essence of their argument is a tripartite lament that they were lulled into complacency by a combination of (i) the PRHFA's inclusion of the 9% rate on the IRS 8609 forms, (ii) the alleged concealment of the seizure in the "minutiae" of those forms, and (iii) the omission from the PRHFA's transmittal letter (which accompanied the delivery of the forms) of any mention of its decision to decrease the qualified bases. Implicit in this lamentation is the premise that a reasonable person would not have examined the forms before submitting them to the IRS, notwithstanding the obvious financial stakes. We think that this premise is untenable, especially in light of the general rule that a taxpayer is deemed to be aware of the contents of his tax filings. See Greer v. Comm'r, 595 F.3d 338, 347 n.4 (6th Cir. 2010) ("A taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents."); Hayman v. Comm'r, 992 F.2d 1256, 1262 (2d Cir. 1993) (similar); Korchak v. Comm'r, 92 T.C.M. (CCH) 199, 213 (2006) (similar).

Contrary to the plaintiffs' importunings, the discovery rule is not apposite here. The discovery rule is meant to aid plaintiffs who, for reasons beyond their control, could not have promptly discovered the facts that form the foundation of their claims. See Kubrick, 444 U.S. at 122. This is not such a case.

-12-

In this instance, the plaintiffs had in hand all of the facts needed to bring their claim no later than April 15, 2010. By that date, there was nothing of consequence left for them to discover. Because they did not sue within the one-year period next following, their suit was time-barred.

Battling on, the plaintiffs attack on a different front. They fustigate that their suit cannot be deemed untimely because they did not receive "fair notice" of the PRHFA's alleged sleight of hand until November of 2010 (when the PRHFA confirmed its calculations in an e-mail). This cross-pollinated argument is misshapen; it conflates the "notice" component of due process with the knowledge requirement for accrual of the limitations period. Cf. Kelly v. City of Chicago, 4 F.3d 509, 512-13 (7th Cir. 1993) ("Just because the state believed that fairness compelled it to allow judicial review of its decision to revoke the liquor license, does not mean that the date of injury is postponed until exhaustion of the appeals process.").

Once a plaintiff has knowledge of the facts needed to bring a claim, it cannot wait idly for process to be afforded or for the defendant to change its mind. See Rivera-Muriente, 959 F.2d at 354. Wishful thinking does not toll the statute of limitations.

Staring into the abyss, the plaintiffs struggle to shift the trajectory of the debate. They suggest that their action is

-13-

really one for breach of contract and that Puerto Rico's 15-year statute of limitations for such actions, see K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 n.2 (1st Cir. 1989) (citing P.R. Laws Ann. tit. 31, § 5294), therefore applies. This suggestion is fatuous.

The plaintiffs' complaint cannot fairly be read to plead breach of contract. It seeks only equitable relief and does not identify any particular provisions of the Agreements that might have been breached. Nor could it: the Agreements state unambiguously that the basis figures that lie at the heart of the plaintiffs' claim are "estimates for computation purposes only." There is simply no way to construe this language as a binding promise.[5]

The plaintiffs have a fallback position. They assert that, notwithstanding the customary operation of the limitations period, the district court should have resurrected their suit by invoking the doctrine of equitable tolling. This assertion lacks force.

_____

[5] At any rate, reading the complaint as one for breach of contract would not extricate the plaintiffs from the hole they have dug. Were the complaint to be read as pleading a claim for breach of contract instead of a claim for violation of section 1983, the federal courts would lack subject-matter jurisdiction over the action. See Mun'y of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc., 726 F.3d 8, 17 (1st Cir. 2013). In such an event, this entire proceeding would be a nullity.

-14-

"We review a district court's ruling rejecting the application of the doctrine of equitable tolling for abuse of discretion." Abraham v. Woods Hole Ocean. Inst., 553 F.3d 114, 119 (1st Cir. 2009). This review takes place in light of the background precepts that equitable tolling is available only "in exceptional circumstances," Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004), and "only when the circumstances that cause a plaintiff to miss a filing deadline are out of [its] hands," Kelley v. NLRB, 79 F.3d 1238, 1248 (1st Cir. 1996) (internal quotation mark omitted).

There was no abuse of discretion here. The plaintiffs' delay in bringing suit was of their own contrivance; by April 15, 2010, they had every bit of information that they needed to institute a civil action against the PRHFA. The agency's failure to be more forthcoming when transmitting the IRS 8609 forms did not, on any realistic view of the situation, prevent the plaintiffs from meeting the limitations deadline. A party is entitled to knowledge of the relevant facts, not to a spoon-feeding of those facts.

To cinch matters, we cannot fault the district court for determining that there were no exceptional circumstances such as would justify the plaintiffs' failure to sue within the limitations period. Courts, like the Deity, are prone to help those who help themselves; and the plaintiffs, having failed to exercise

-15-

reasonable vigilance to protect their own interests, could not expect the district court to regard the absence of a more explicit agency statement as an excusatory circumstance.

## III.  CONCLUSION

We need go no further.[6]  For the reasons elucidated above, we affirm the judgment of the district court.


**Affirmed.**

---

[6] Because the district court's entry of judgment on the pleadings is fully supportable on temporal grounds, we have no occasion to discuss either its waiver ruling or its determination that the plaintiffs lacked a constitutionally protected property interest in the additional tax credits.  After all, there is no point in shooting bullets into a corpse.