# United States Court of Appeals
## For the First Circuit

Nos. 15-1419
     15-1577

TRAFON GROUP, INC.,

Plaintiff, Appellant,

v.

BUTTERBALL, LLC,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Lipez, Circuit Judges.

Jorge I. Peirats, with whom Jason R. Aguiló-Suro and Pietrantoni Méndez & Álvarez LLC, were on brief, for appellant.
Luis A. Oliver, with whom Salvador Antonetti-Zequeira and Fiddler González & Rodríguez, P.S.C., were on brief, for appellee.

May 2, 2016

**TORRUELLA**, **Circuit Judge**.  Filing suit in the United States District Court for the District of Puerto Rico, Plaintiff-Appellant Trafon Group, Inc. ("Trafon") alleges that Defendant-Appellee Butterball, LLC ("Butterball") breached an exclusive distribution agreement in violation of Puerto Rico's Law 75 of June 24, 1964, P.R. Laws Ann. tit. 10, § 278 et seq. ("Law 75"). Trafon sought a preliminary injunction, asking that the district court enjoin Butterball from further impairing Trafon's exclusive distribution rights.  The district court denied the motion on the basis that Trafon's claim was barred under Law 75's three-year statute of limitations and subsequently dismissed the case under Federal Rule of Civil Procedure 56(f).  Trafon now appeals the denial of the preliminary injunction and the judgment against it.

**I.**

A Puerto Rico-based wholesale food distributor, Trafon alleges that, in June 2009, it acquired certain assets from Packers Provisions Company of Puerto Rico, including an exclusive distribution agreement with Butterball for whole bird and turkey part products in Puerto Rico.[1]  Soon after the deal was executed, Trafon learned that Butterball was selling its products to a

---

[1]  Neither the original Asset Purchase Agreement nor the attached documents reference an exclusive distribution agreement between Butterball and Packers Provisions Company.

Florida wholesaler that was distributing those products to a retailer in Puerto Rico. On October 14, 2009, Trafon's counsel wrote to Butterball expressing concerns that Butterball was violating the exclusive distribution agreement. On October 26, 2009, Butterball's counsel sent a letter (the "2009 letter") denying Trafon's allegation:

> [T]he allegation of a Law 75 violation rests on the incorrect premise that your clients acquired exclusive rights to distribute Butterball products in Puerto Rico. For many years, Butterball (and its predecessors) have offered Butterball branded products for sale and distribution within Puerto Rico without entering into a written agreement or appointing an exclusive distributor. . . . [W]e have not located any documents corroborating your clients' conclusory allegation that Butterball or any predecessors (i.e., the principals) granted any exclusive distribution rights in Puerto Rico limiting the principals' right to sell directly or appoint competing distributors. If your clients have any evidence to the contrary on this issue, we would appreciate it if you would produce the same to us immediately. . . . Butterball has an interest to negotiate in good faith the terms of a formal written non-exclusive agreement with your clients for the sale and distribution of its products in Puerto Rico. During this time, Butterball is agreeable to continue to do business with your clients on the same non-exclusive terms and on a purchase order basis as has existed over the past few months.

The record does not reveal whether Trafon or its counsel responded to the 2009 letter. Trafon and Butterball continued to do business together, and each invoice that Trafon received from Butterball contained the following notice:

As confirmed by way of letter dated October 26, 2009, any and all purchase orders for Butterball branded products fulfilled by Butterball LLC are done so on a non-exclusive basis. Nothing contained in this invoice, nor any act or omission to act by Butterball LLC, is intended to grant you with any exclusive distribution rights in Puerto Rico or elsewhere.

Trafon alleges that, notwithstanding the 2009 letter and subsequent invoices, Butterball treated Trafon as an exclusive distributor. On various occasions where Butterball made direct sales to Puerto Rico supermarkets in contravention of Trafon's alleged exclusive rights, Butterball paid Trafon commissions. For example, in 2010, Trafon consented to direct sales that Butterball made to the supermarket chain Selectos and received a commission of two cents per pound on the sale.[2] Similarly, on multiple instances Trafon suspected Butterball was working directly with supermarkets in Puerto Rico or negotiating with different Puerto Rico-based distributors. Rather than deny that Trafon was their exclusive distributor, Butterball responded to Trafon's queries by promising to investigate the situations. For example, after Trafon saw that the retailer Pueblo was selling Butterball products, it informed Butterball that Trafon had not sold to Pueblo and asserted that this sale was "another violation on Butterball's

---

[2] Butterball contests this account and attests that it consistently sold its products directly to supermarkets and mass retailers in Puerto Rico without paying Trafon.

-4-

end."  Butterball replied that it would "investigat[e] where this fresh turkey sale came from and report back to you."

This relationship lasted until Trafon learned that Butterball made direct sales to various retailers in Puerto Rico without Trafon's knowledge in 2012.  Around this time, Butterball also refused to pay commissions that it allegedly promised Trafon for direct sales to Costco in 2011 and 2012.  Trafon informed Butterball that these actions violated the exclusive distribution agreement.  In April 2013, Butterball responded to these allegations with a flat denial that Trafon and Butterball had ever entered into an exclusivity agreement:

> You are, of course, aware that Butterball has never recognized Trafon as an exclusive distributor of Butterball products. . . .  [A]s things currently stand, Butterball intends to sell to other customers in Puerto Rico on a non-exclusive basis, and Trafon is welcome to purchase products from Butterball on the same basis if it chooses to do so.

Spurred by Butterball's proclamation that it intended to work with other distributors in Puerto Rico, Trafon brought this action in the District of Puerto Rico in September 2013 and moved for a preliminary injunction enjoining Butterball from violating the alleged exclusive distribution agreement.  Following a hearing, a magistrate judge issued a Report and Recommendation ("R&R") recommending that the motion for a preliminary injunction be denied.  The magistrate judge determined that Law 75's three-

year limitations period started when Trafon received the 2009 letter, and, as a result, Trafon's claims were time-barred. The magistrate judge also found that, even assuming Trafon's claims were timely, Trafon had failed to show that it had ever entered into an exclusive contract with Butterball. Adopting the R&R's conclusion that Trafon's claims were time-barred, the district court denied the request for a preliminary injunction. It declined to reach the question of whether the parties had an exclusive distribution relationship.

The district court also entered an order for Trafon to show cause as to why the case should not be dismissed under Federal Rule of Civil Procedure 56(f) (a court may consider summary judgment sua sponte "[a]fter giving notice and a reasonable time to respond"). In response, Trafon sought reconsideration of the order denying the preliminary injunction. The district court denied the motion and entered judgment for Butterball. Trafon now appeals the denial of the preliminary injunction and subsequent dismissal of its case.

## II.

### A.

The district court's grant or denial of a preliminary injunction is reviewed for an abuse of discretion, with conclusions of law reviewed de novo and findings of fact for clear error.

-6-

Bl(a)ck Tea Soc'y v. City of Bos., 378 F.3d 8, 11 (1st Cir. 2004). The parties do not contest the basic facts, and neither party disputes that the determination of whether Trafon's claim is time-barred is subject to de novo review. See Montalvo v. González-Amparo, 587 F.3d 43, 46 (1st Cir. 2009); Skwira v. United States, 344 F.3d 64, 72 (1st Cir. 2003).

**B.**

Law 75 provides that, in a dealer's contract,[3] "no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause." P.R. Laws Ann. tit. 10, § 278a; see also Irvine v. Murad Skin Research Labs., Inc., 194 F.3d 313, 317 (1st Cir. 1999) ("Law 75 limited the principal's ability to end the relationship unilaterally except for 'just cause' . . . . " (quoting P.R. Laws Ann. tit. 10, § 278a)). In this way, Law 75 serves "to avoid the

---

[3] Under Law 75, a "dealer's contract" is defined as a

> [r]elationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.

P.R. Laws Ann. tit. 10, § 278(b).

inequity of arbitrary termination of distribution agreements once the designated dealer ha[s] successfully developed a local market for the principal's products and/or services." Irvine, 194 F.3d at 317; see also R.W. Int'l Corp. v. Welch Food, Inc., 13 F.3d 478, 482 (1st Cir. 1994).

Law 75 contains a three-year statute of limitations, providing that "[e]very action . . . shall prescribe in three years reckoning from the date of the definite termination of the dealer's contract, or of the performing of the detrimental acts, as the case may be." P.R. Laws Ann. tit. 10, § 278d. The magistrate judge found, and the district court agreed, that Butterball's 2009 letter notifying Trafon that they did not have an exclusive relationship constituted a "detrimental act" under Law 75 and, therefore, that the statute of limitations had expired long before Trafon brought suit in 2013.

The parties contest whether the 2009 letter is a detrimental act under Basic Controlex Corp., Inc. v. Klockner Moeller Corp., 202 F.3d 450 (1st Cir. 2000), which also involves the alleged breach of an exclusive distribution agreement. There, "KMC [the principal] informed Basic Controlex [the distributor] that it intended to sell its products through other distributors in Puerto Rico, 'effective immediately.'" Id. at 452. Although the parties disputed whether KMC acted on these plans, this court

determined that Basic Controlex's Law 75 action, brought over three years after it received this notice from KMC, was time-barred because "Basic Controlex had notice of its claim as soon as KMC announced its plan to use other distributors in 1993. That announcement constituted the 'performing of a detrimental act' under Act 75, sufficient to trigger the statute." Id. at 453 (internal formatting omitted).

Similarly, the 2009 letter put Trafon on notice that Butterball did not view their relationship as exclusive. Trafon argues that the 2009 letter was insufficient to start Law 75's statute of limitations as it did not mention an "affirmative act." According to Trafon, KMC's letter in Basic Controlex announced concrete plans to begin working with other distributors, whereas the 2009 letter was simply a statement of legal position. Trafon's argument, however, overlooks a significant component of Basic Controlex: there, the First Circuit found summary judgment appropriate on statute of limitations grounds although the parties disputed whether KMC had followed through on its plans. Id. at 452. In other words, KMC's letter constituted a detrimental act regardless of whether KMC actually contracted with other distributors: what mattered was that KMC had announced its intent to do so. Likewise, the 2009 letter announced Butterball's intent not to treat Trafon as its exclusive distributor. Once Trafon

-9-

received the letter, it was on notice that Butterball could begin working with other distributors at any point in contravention of the alleged agreement. See id. at 453 ("On May 3, 1993, KMC expressly informed Basic Controlex of its intent to use other distributors in alleged violation of the parties' agreement."). As in Basic Controlex, Butterball's subsequent actions have no bearing on whether the 2009 letter was a detrimental act under the statute.

Trafon argues that this interpretation of Law 75 will benefit principals at the expense of distributors. As Trafon sees it, principals could announce to distributors that they do not intend to honor rights conferred by Law 75 and wait three years to act on those intentions, thereby forcing distributors to bring lawsuits without having suffered injury. In this way, distributors would be forced to bring costly lawsuits with no prospect of damages or else risk forfeiting their rights under Law 75. To be sure, "evidence of the damages sustained is an essential requirement" for an award under Law 75. Marina Indus., Inc. v. Brown Boveri Corp., 114 D.P.R. 64, 90 (1983) (official translation); see also Sun Blinds, Inc. v. S.A. Recasens, 111 F. App'x 617, 619 (1st Cir. 2004) ("If a plaintiff proves termination or impairment of the business relationship by the defendant, Law 75 provides a formula for indemnification but only 'to the extent

of the damages caused.'" (quoting P.R. Laws Ann. tit. 10, § 278b)). Nevertheless, lawsuits are costly for plaintiffs and defendants alike, and we are not convinced that today's result will lead to companies merrily announcing their intent to breach contracts and thus inviting litigation under Law 75.

More importantly, the 2009 letter was a response to Trafon's accusations that Butterball had worked with another distributor, Quirch Foods. Had Trafon brought a timely suit under Law 75, it could have identified damages stemming from that transaction and sought provisional injunctive relief under Law 75, just as it did here. See P.R. Laws Ann. tit. 10, § 278b-1.[4] By their very nature, limitations periods punish plaintiffs who sit on their rights once they have the requisite knowledge to assert a claim: Trafon could not simply wait to file until Butterball committed a more costly breach. Cf. Jardín de las Catalinas Ltd. P'ship v. Joyner, 766 F.3d 127, 134 (1st Cir. 2014) ("Once a plaintiff has knowledge of the facts needed to bring a claim, it cannot wait idly for process to be afforded or for the defendant to change its mind.").

---

[4] While the record does not indicate how this issue was resolved after Trafon received the 2009 letter, during oral argument Trafon indicated that it did not bring suit at the time because Butterball denied having made these sales. Nevertheless, this denial did not prevent Trafon from filing a breach of contract claim based on its allegations.

Trafon contends that, even if the 2009 letter constituted a detrimental act under Law 75, Butterball's statute of limitations defense should be barred on equitable estoppel grounds. In the alternative, Trafon argues that a de facto exclusive relationship developed following its receipt of the 2009 letter. Butterball contends that these issues are waived as they were not raised before the magistrate. Although Trafon asserts that these issues were addressed in its objection to the R&R, "an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate." Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988); accord Fireman's Ins. Co. of Newark, N.J. v. Todesca Equip. Co., Inc., 310 F.3d 32, 38 (1st Cir. 2002).[5]

---

[5] In any case, Trafon would be unlikely to succeed on the merits of these claims. It is undisputed that Butterball regularly submitted invoices to Trafon indicating that their relationship was not exclusive. Given these repeated and explicit assertions to the contrary, Butterball is unlikely to "have intentionally induced the plaintiff to rely upon representations that" their relationship was exclusive, Matosantos Commercial Corp. v. SCA Tissue N. Am., LLC, 329 F. Supp. 2d 255, 259 (D.P.R. 2004), or otherwise created an exclusive agreement by action alone, see Vulcan Tools of P.R. v. Makita USA, Inc., 23 F.3d 564, 569 (1st Cir. 1994) ("Law 75 does not operate to convert non-exclusive distribution contracts into exclusive distribution contracts."). Trafon contends that its executives never saw these invoices, as they were handled by clerical employees. Butterball, however, cannot be faulted for Trafon's failure to read critical information that it received on a regular basis. See Restatement (Second) of Contracts § 157 cmt. b ("Generally, one who assents to a writing

## III.

Because the 2009 letter constituted a detrimental act under Law 75, Trafon's action is time-barred, and the judgment of the district court is affirmed.

**<u>Affirmed</u>.**

---

is presumed to know its contents . . . .").